**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
(212) 661-9397 – facsimile
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
jfeuerstein@kandfllp.com
dzinman@kandfllp.com
skossar@kandfllp.com

*Attorneys for 3052 Brighton 1st Street II LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 3052 Brighton First, LLC, | Case No. 20-40794-nhl |
| Debtor. | Hon. Nancy Hershey Lord<br>United States Bankruptcy Judge |

-----------------------------------------------------------x

### APPLICATION IN SUPPORT OF THE ENTRY OF
### AN ORDER EXCUSING THE RECEIVER FROM TURNOVER
### AND OTHER REQUESTED RELIEF

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

3052 Brighton 1st Street II LLC ("3052 Brighton" or "Secured Creditor"), a secured creditors and mortgagee of the Debtor, 3052 Brighton First, LLC (the "Debtor"), by and through its attorneys, Kriss & Feuerstein LLP, respectfully submits this application (the "Application") for the entry of an Order: (i) authorizing the Receiver Gregory M. LaSpina (the "Receiver") to remain in possession, custody control of the Debtor's Property pursuant to 11 U.S.C. § 543(d); (ii) excusing the Receiver from any turnover requirement pursuant to 11 U.S.C. § 543(a) and (b), including pending resolution of this motion; (iii) authorizing the Receiver to maintain and operate the 3052/3062 Brighton 1st Street, Brooklyn, New York 11235 (Block: 8669, Lot: 18) (the

1

"3052/3062 Property") in the ordinary course of business and pursuant to the Receivership Order entered November 21, 2017 (the "Receivership Order") pursuant to 11 U.S.C. § 543(c); and (iv) granting such further and different relief as the Court may deem just and proper. In support of its Application, the Secured Creditor respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The instant Chapter 11 case was clearly commenced in bad faith and solely for the purpose of preventing the Secured Creditor, the Debtor's single largest pre-petition secured creditor, from exercising its right to foreclose its mortgage secured by the Debtor's investment property, on the same day that the Secured Creditor was to conduct a sale of the 3052/3062 Property, pursuant to a Judgment of Foreclosure and Sale entered on November 21, 2017 (the "JFS"), entered prior to the commencement of this case.  As shall be further set forth below, the Debtor made no less than five attempts to stay and/or vacate the JFS and nine (9) post-judgment "emergency motions" prior to filing its petition.

2. The Debtor has no intention (or ability) to reorganize, but rather simply seeks to prevent the Secured Creditor from exercising its rights which derive from prepetition loans made to and fully utilized by the Debtor that have been in default since April 2015.

3. As set forth more fully below, based upon the documents the Debtor has filed to date, and the information in Debtor's petition and schedules, Debtor has little income and has failed to make any post-petition payments to the Secured Creditor. Thus, this Chapter 11 case can only be considered another bad faith filing, as it is a delaying tactic amidst a dispute between the Debtor and the Secured Creditor which was resolved in favor of Secured Creditor by the issuance of the JFS.

4. Moreover, Debtor's controlling individuals, Chaim Miller a/ka Henry Miller

("Miller") and Sam Sprei ("Sprei") are no strangers to the bankruptcy court. In fact, these long-time business associates in another bankruptcy case, In Re: 97 Grand Avenue LLC (Case No: 1:15-13367-shl), Hon. Sean H. Lane (at the request of the Secured Creditor, 97 Grand Ave Brooklyn First LLC) appointed a Chapter 11 Trustee due to gross-mismanagement in which, *inter alia*, Miller and Sprei engaged in authorized and improper depletion and disbursements of substantial funds of the Debtor's estate in the sum of almost $500,000.00.

5. Due to the history of gross-mismanagement in the 97 Grand case and pre-petition events, this Court should permit the receiver, Gregory LaSpina, (the "Receiver") to continue in control of the property and be excused from turnover.

6. Accordingly, and for the reasons set forth below, the Secured Creditor respectfully request that this Court enter an order: (i) authorizing the Receiver to remain in possession, custody control of the Debtor's Property pursuant to 11 U.S.C. § 543(d); (ii) excusing the Receiver from any turnover requirement pursuant to 11 U.S.C. § 543(a) and (b), including pending resolution of this motion, (iii) authorizing the Receiver to maintain and operate the 3052/3062 Property in the ordinary course of business and pursuant to the Receivership Order pursuant to 11 U.S.C. § 543(c); and (iv) granting such further and different relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), §§ 543(a), 543(b), 543(c) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 1017, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Rules").

## BACKGROUND

**The 3052/3062 Loan**

9.  On March 27, 2014, the Debtor duly executed, acknowledged, and delivered to Signature Bank ("Signature"), an Amended, Consolidated and Restated Mortgage Note (the "Note") in the principal amount of $17,000,000.00 in connection with a commercial loan (the "Loan"). A copy of the Note is annexed hereto as **Exhibit "A"**.

10. On March 27, 2014, to secure repayment of the indebtedness evidenced by the Note, the Debtor duly executed, acknowledged, and delivered to Signature, a Mortgage Consolidation, Modification, Security Agreement and Fixture Filing in the amount of $17,000,000.00 (the "Mortgage") encumbering the 3052/3062 Property. The Mortgage was recorded on May 6, 2014 in the Office of the City Register of the City of New York, County of Kings (the "City Register") under City Register File No. ("CRFN"): 2014000152240. A copy of the Mortgage is annexed hereto as **Exhibit "B"**.

11. Pursuant to the Mortgage, Secured Creditor is entitled the appointment of a Receiver, which sets forth in relevant part:

> "… apply for the appointment of a custodian, trustee, receiver, liquidator or conservator of the Mortgage Property, without notice and without regard for the adequacy of the security of the Debtor and without regard for the solvency of the Mortgage, or of any person, party or entity liable for the payment of the Debt…"

(See **Exh. B**, at §2.2(viii)).

12. On March 27, 2014, as further security for the Note, Miller (collectively, with the Debtor, the "Borrowers"), individually, executed, acknowledged, and delivered to Signature, a Limited Guarantee (the "Guarantee"), guaranteeing all obligation under the Loan to Signature. A copy of the Guaranty is annexed hereto as **Exhibit "C"**.

4

**Assignment to Secured Creditor**

13.     On June 8, 2015, Signature assigned the Note and Mortgage to Secured Creditor pursuant to an Assignment of Mortgage (the "Assignment of Mortgage"), which was recorded in the City Register on June 30, 2015 under CRFN: 2015000224688. A copy of the Assignment of Mortgage is annexed hereto as **Exhibit "D"**.

14.     In addition, on June 8, 2015, the Note was endorsed to the Secured Creditor as evidenced by the allonge (the "Allonge") affixed to the Note (*See* Carmel Declaration, ¶ 10) dated June 8, 2015 (See **Exh A**).

15.     Secured Creditor is now the owner and holder of the Note, Mortgage, Guaranty and any and all other loan documents (collectively, the "Loan Documents") evidencing the Loan.

**The First Mezzanine Loan**

16.     On September 18, 2014, 3052 Brighton 1st Street LLC (the "First Mezz Lender"), an affiliate of Secured Creditor, made a first mezzanine loan in the sum of $9,000,000.00 (the "First Mezz Loan") to 3052 Brighton MB LLC (the "Brighton Mezz Borrower"), 203-205 N8 MB LLC and 97 Grand MB LLC (collectively the "First Mezz Borrowers") pursuant to a Mezzanine Loan Agreement (the "First Mezzanine Loan Agreement"). A copy of the First Mezzanine Loan Agreement is annexed hereto as **Exhibit "E"**.

17.     On September 18, 2014, the First Mezz Borrowers duly executed, acknowledged, and delivered to the First Mezz Lender a Secured Promissory Note (the "First Mezz Note") in the principal amount of $9,000,000.00 in connection with the First Mezz Loan. A copy of the First Mezz Note is annexed hereto as **Exhibit "F"**.

18.     On September 18, 2014, to secure repayment of the indebtedness evidenced by the

First Mezz Note, the Debtor[1] duly executed, acknowledged, and delivered to the First Mezz Lender a Collateral Mortgage and Security Agreement in the amount of $9,000,000.00 (the "First Mezz Mortgage") encumbering the 3052/3062 Property which was recorded on July 28, 2015 in the City Register under CRFN: 201500257783. A copy of the First Mezz Mortgage is annexed hereto as **Exhibit "G"**.

19.     On September 18, 2014, as further security for the Mezz Note, the Debtor duly executed, acknowledged, and delivered to the First Mezz Lender a Guaranty (the "First Mezz Guaranty"), guaranteeing all obligations under the First Mezz Loan to the First Mezz Lender. A copy of the First Mezz Guaranty is annexed hereto as **Exhibit "H"**.

20.     The First Mezz Mortgage and the First Mezz Loan Agreement provided, *inter alia*, that the First Mezz Mortgage was cross-defaulted with the Mortgage (and other mortgages), such that a default under the Mortgage was a default under the First Mezz Mortgage. (See **Exh. E**, at §60; **Exh. G** at §**11**).

21.     The Mezz Lender is now the owner and holder of the First Mezz Note, First Mezz Mortgage, First Mezz Guaranty and any and all other loan documents (collectively, the "First Mezz Loan Documents") evidencing the First Mezz Loan.

**The Second Mezzanine Loan**

22.     On September 18, 2014, 203-205 N 8th Street LLC ("Second Mezz Lender" and together with First Mezz Lender, the "Mezz Lenders"), another affiliate of the Secured Creditor, made a second mezzanine loan to Brighton Mezz Borrower, 203-205 North 8th Street Loft LLC

---

[1] The First Mezz Borrowers are affiliated with the Debtor and/or controlled by Miller and Sprei.

("203-205"),[2] and 97 Grand MB LLC (collectively, the "Second Mezz Borrowers") in the principal amount of $3,000,000.00 (the "Second Mezz Loan" and together with the First Mezz Loan, the "Mezz Loans") pursuant to a Mezzanine Loan Agreement (the "Second Mezzanine Loan Agreement"). A copy of the Second Mezzanine Loan Agreement is annexed hereto as **Exhibit "I"**.

23. On September 18, 2014, the Second Mezz Borrowers duly executed, acknowledged, and delivered to the Second Mezz Lender a Secured Promissory Note in the principal sum of $3,000,000.00 (the "Second Mezz Note" and together with the First Mezz Note, the "Mezz Notes"). A copy of the Second Mezz Note is annexed hereto as **Exhibit "J"**.

24. On September 18, 2014, to secure repayment of the indebtedness evidenced by the Second Mezz Note, 203-205 duly executed, acknowledged, and delivered to the Second Mezz Lender a Mortgage and Security Agreement in the amount of $3,000,000.00 (the "Second Mezz Mortgage") encumbering the real property located at 203-205 North 8th Street, Brooklyn, New York 11211 which was recorded on November 7, 2014 in the City Register under CRFN: 2014000369345. A copy of the Second Mezz Mortgage is annexed hereto as **Exhibit "K"**.

25. On September 18, 2014, as further security for the Second Mezz Note, Miller duly executed, acknowledged, and delivered to the Second Mezz Lender, a Guaranty (the "Second Mezz Guaranty") guaranteeing all obligations under the Second Mezz Loan to the Second Mezz Lender. A copy of the Second Mezz Guaranty is annexed hereto as **Exhibit "L"**.

26. The Second Mezz Mortgage and the Second Mezz Loan Agreement provided, *inter alia*, that the Second Mezz Mortgage was cross-defaulted with the Mortgage (and other

---

[2] 203-205 North 8th Loft LLC has filed a related petition for relief under Chapter 11 of the Bankruptcy Code (See Case No. 20-40794-nhl) in which the Second Mezz Lender has also filed a similar application excusing turnover simultaneously (the "203-205 Motion"). In the 203-205 Motion, the Second Mezz Lender is referred to as "203-205" and the Second Mezz Loan is referred to as the "203-205 Loan".

mortgages), such that a default under the Mortgage was a default under the First Mezz Mortgage. (See **Exh. I**, at §60; **Exh. K** at §11).

27. The Second Mezz Lender is now the owner and holder of the Second Mezz Note, Second Mezz Mortgage, Second Mezz Guaranty and any and all other loan documents (collectively, the "Second Mezz Loan Documents") evidencing the Second Mezz Loan.

**The Default and Foreclosure Action**

28. The Debtor defaulted under Loan Documents by failing to remit the monthly payment due on April 1, 2015, and each payment thereafter (the "Default") (See **Exhibit M**).

29. As a result of the Default, pursuant to the terms of the Loan Documents, Secured Creditor declared the balance of the principal indebtedness immediately due and payable and commenced a mortgage foreclosure action (the "Foreclosure Action") in the Supreme Court of the State of New York, County of Kings (the "State Court") under Index No. 509304/2015 in the matter originally styled *3052 Brighton 1st Street II LLC v. 3052 Brighton First LLC, et al.* The Summons (the "Summons") and Complaint (the "Complaint") were filed with the Kings County Clerk on July 29, 2015. A copy of the Summons and Complaint is annexed hereto as **Exhibit "M"** (exhibits omitted).

30. On October 29, 2015, Secured Creditor, the Debtor and Miller, entered into a Stipulation of Forbearance in Foreclosure Action (the "Forbearance Stipulation"), which provided, *inter alia*:

- Debtor acknowledged the validity of the Loan Documents and the Default (*see id*. at ¶¶ 1-2);
- Debtor waived all defenses to the Foreclosure Action (*see id*. at ¶¶ 2-3);
- Debtor acknowledged the indebtedness to Secured Creditor under the Loan Documents (*see id*. at ¶ 4);
- Secured Creditor agreed to accept a discounted payoff for the Loan only if payment was made on or before the Termination Date of January 15, 2016 (*see id*. at ¶ 6);

8

- Debtor consented to immediate entry of the judgment of foreclosure and sale (*see id*. at ¶7);
- Debtor agreed that Secured Creditor may continue prosecute the Foreclosure Action in order to obtain a judgment of foreclosure and sale (*see id*. at ¶ 9); and
- Debtor acknowledged that it does not rely upon any oral representation of Secured Creditor in entering into the Forbearance Stipulation, and that the Forbearance Stipulation can only be amended by a signed writing (*see id*. at ¶ 20).

A copy of the Forbearance Stipulation is annexed hereto as **Exhibit "N"**.

31. However, as further stated below, the Debtor violated the terms of the Stipulation by failing to make the discounted payoff for the Loan and by engaging in vexatious motion practice.

32. By order entered November 21, 2017, Hon. David B. Vaughan, J.S.C. ("Justice Vaughan"), over the applications of the Debtor to vacate its default, granted a Judgment of Foreclosure and Sale (the "JFS") in favor of Secured Creditor, entitling Secured Creditor to foreclose upon the 3052/3062 Property and awarding Secured Creditor, *inter alia*, the sum of $18,977,604.50, plus interests and costs (*See* NYSCEF Nos. 49-87, 92-108, 159-170).[3] The JFS also provides that surplus rights are granted on account of the First Mezz Mortgage where if there is a surplus over the amounts due to Secured Creditor after a sale of the 3052/3062 Property, the surplus is immediately paid to the First Mezz Lender. A copy of the Judgment of Foreclosure and Sale is annexed hereto as **Exhibit "P".**

33. By order entered November 21, 2017, Justice Vaughan over the opposition of the Debtor, issued an order (the "Receivership Order"), *inter alia*, appointing Gregory LaSpina, Esq. as Receiver of the 3052/3062 Property (*See* NYSCEF Nos. 109-158). A copy of the Receivership Order is annexed hereto as **Exhibit "Q"**.

---

[3] "NYSCEF" refers to the document numbers on the New York State Courts Electronic Filing System for the Foreclosure Action. In the interest of judicial economy, where applicable, the Application references the NYSCEF No. provided on the document list annexed hereto as **Exhibit "O"**.

34. On December 4, 2017, the Debtor filed its *first* application by order to show cause seeking to vacate the JFS (the "First OSC"), which opposed by the Secured Creditor but ultimately withdrawn at oral argument by counsel for the Debtor after Justice Vaughan's law clerk noted the Debtor failed to provide any new evidence and failed to identify what Justice Vaughan allegedly overlooked or misapprehended when granting the JFS in favor of Secured Creditor (*See* NYSCEF Nos. 179-192, 198, 202).

35. On April 12, 2018, Secured Creditor scheduled a sale for June 14, 2019 (*See* NYSCEF No. 207).

36. By order entered May 25, 2018 (the "Second OSC Denial Order"), Justice Vaughan denied Debtor's *second* order to show cause to vacate the JFS (the "Second OSC"), noting *inter alia*, that the Debtor failed to provide any legal of factual basis to vacate the JFS. A copy of the Second OSC Denial Order is annexed hereto as **Exhibit "R"**.

37. On June 1, 2018, the Debtor filed a Notice of Appeal of the Second OSC Denial Order (*See* NYSCEF No. 235).

38. On June 7, 2018, the Debtor filed its *third* order show cause for a discretionary stay pending appeal ("OSC for stay pending appeal") pursuant to CPLR 5519 which was opposed by Secured Creditor (*See* NYSCEF No. 236-252).

39. On June 25, 2018, Secured Creditor scheduled a sale for August 2, 2018 (*See* NYSCEF No. 253).

40. By order entered July 31, 2018, Justice Vaughan, denied the OSC for a stay pending appeal (the "OSC for Stay Pending Appeal Denial Order"). A copy of the OSC for Stay Pending Appeal Denial Order is annexed hereto as **Exhibit "S".**

41. By order entered August 27, 2018, the Appellate Division, Second Department (the

"Second Department"), entered an order, denying the Debtor's *fourth* order to show cause for a stay of enforcement of the Second OSC Denial Order. A copy of the order from the Second Department is annexed hereto as **Exhibit "T"**.

42. On September 11, 2018, the Secured Creditor scheduled a sale for October 11, 2018 (*See* NYSCEF No. 265).

43. On October 10, 2018, without any avenue to attack the JFS, the Debtor's *fifth* Order to Show Cause (the "Discovery OSC"), sought to depose their prior counsel which was opposed by Secured Creditor (*See* NYSCEF No. 270-296).

44. On July 22, 2019, Debtor filed its *sixth* Order to Show Cause to vacate the JFS was again withdrawn at oral argument against Justice's Vaughan's law clerk advised that the application was inappropriate because it did not seek leave to renew or reargue the Second OSC denial order.

45. By order dated November 6, 2019, (the "Discovery OSC Order"), Justice Vaughan ultimately adjudicated the Discovery OSC by permitting a deposition of their prior counsel prior to the next foreclosure sale date. In addition, due to the Debtor's vexatious tactics, the Debtor was directed to pay on or before November 20, 2019, costs adjourning the foreclosure sale, including attorneys' fees in the amount of $4,500.00 for the related court appearance and publication costs associated with prior foreclosures sale. The Discovery OSC Order also set forth that the failure to complete the deposition is not to serve as a further basis to stay or adjourn the Foreclosure Sale. A copy of the Discovery OSC Order is annexed hereto as **Exhibit "U"**.

46. By Order dated December 18, 2019 (the "Second Discovery OSC Order"), Justice Vaughan adjudicated the Debtor's *seventh* order to show cause (the "Second Discovery OSC") and Secured Creditor's motion for a protective order directing a further deposition of the Debtor's

prior counsel with respect to an email on before January 17, 2020 and all costs in the Discovery OSC order are to be paid to Secured Creditor. A copy of the Second Discovery OSC Order is annexed hereto as **Exhibit "V"**.

47.     On December 31, 2019, Secured Creditor scheduled a sale of the 3052/3062 Property for February 6, 2020 (the "Foreclosure Sale"). A copy of the Notice of Sale is annexed hereto as **Exhibit "W"**.

48.     On January 30, 2020, the Debtor filed its *eighth* order to show cause for further non-meritorious discovery, which was opposed by the Secured Creditor (*See* NYSCEF No. 439-457, 460-478).

49.     After oral argument on February 6, 2020, Debtor's eighth OSC was denied in its entirety. A copy of the February 6, 2020 order the "February 2020 OSC Denial Order") is annexed hereto as **Exhibit "X"**, which notes, *inter alia*:

> "Defendant's contentions concerning the conduct of former counsel are insubstantial and speculative. Movant's other contentions also lack merit. The instant osc is the latest thinly veiled attempt to once against delay/defeat this already too often delayed proceeding. Accordingly, osc is denied. All stays vacated. Auction may proceed as scheduled.

(See **Exh. X**).

50.     On the same day, the Second Department also denied Debtor's *ninth* OSC for a stay pending appeal.

**97 Grand Bankruptcy**

51.     On December 28, 2015, Chun Peter Dong ("Dong"), an alleged creditor of the 97 Grand Avenue LLC ("97 Grand"), caused an involuntary petition for Chapter 7 bankruptcy relief (the "Involuntary Case") to be filed against 97 Grand before the United States Bankruptcy Court for the Southern District of New York (Case No. 15-13367-shl) (the "97 Grand Bankruptcy Case").

52.     On April 13, 2016, the Bankruptcy Court entered an Order, granting the Debtor's motion to convert the Involuntary Case to a voluntary proceeding under Chapter 11 [97 Grand ECF No[4]. 22].

53.     97 Grand's refiled petition was executed by Miller. A copy of the Petition is annexed hereto as **Exhibit "Z".**

54.     On October 14, 2016, Hon. Sean H. Lane ("Judge Lane") entered a Stipulation and Order (the "Cash Collateral Order") between 97 Grand and 97 Grand Avenue Brooklyn First LLC ("Brooklyn First") (97 Grand's largest pre-pre-petition creditor) Authorizing the Debtor's Interim Use of Cash Collateral Pursuant to § 363 and Providing Adequate Protection Pursuant to §§ 361 and 362 (97 Grand ECF No. 80). A copy of the Cash Collateral Order is annexed hereto as **Exhibit "AA"**.

55.     The Cash Collateral Order, *inter alia*, required that 97 Grand begin tendering monthly payments to the Brooklyn First from 97 Grand's use of the Secured Creditor's cash collateral from July 2016 through October 2016 (See *id*). In addition, the Cash Collateral Order required that 97 Grand file and serve a plan of reorganization and a disclosure statement by or before October 31, 2016, which 97 Grand was to seek confirmation on or before November 30, 2016 (See *id*).

56.     97 Grand failed to tender a single timely payment to the Brooklyn First and failed to file any plan or disclosure statement (See **Exh. BB**).

57.     More alarmingly, it came to the attention of the United States Trustee and Brooklyn First that 97 Grand (controlled by Miller and Sprei) was engaged in gross-mismanagement 97 Grand's Estate by making payments to insiders in the aggregate, but unauthorized and unexplained

---

[4] References to "97 Grand ECF No." refers to the docket entries in the 97 Grand Bankruptcy Case. Where applicable, the Application references the docket entry provided on the case docket annexed hereto as **Exhibit "Y"**.

sum of $449,968.47. Accordingly, both the United States Trustee filed application to convert the case to one under Chapter 7 and Brooklyn First filed an application (the "Chapter 11 Trustee Application") seeking, *inter alia,* appointment of a Chapter 11 Trustee. A copy of the Chapter 11 Trustee Application is annexed hereto as **Exhibit "BB"** (exhibits omitted).

58. On January 10, 2017, after a hearing a was held, Judge Lane entered an order ("Chapter 11 Trustee Order"), *inter alia*, directing an appointment of a Chapter 11 Trustee due to the unauthorized and improper depletion and disbursements of substantial funds of 97 Grand's Estate to 97 Grand's insiders. A copy of the Chapter 11 Trustee Order is annexed hereto as **Exhibit "CC"**.

**The Instant Bankruptcy Filing**

59. On February 6, 2020, (the "Petition Date"), the Debtor filed a Petition (the "Petition") for relief under for Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") before the United States Bankruptcy Court for the Eastern District of New York (Case No. 20-40794-nhl) (the "Bankruptcy Case"). As such, the Foreclosure Sale was stayed.

60. At the outset of the case, the Debtor failed to file:

   (1) Affidavit Pursuant to E.D.N.Y. LBR 1007-4;
   (2) List of 20 Largest Unsecured Creditors;
   (3) Corporate Resolution Pursuant to E.D.N.Y. LBR 1007-4;
   (4) Corporate Ownership Statement Pursuant to FBR 1007(a)(1);
   (5) Corporate Disclosure Statement Pursuant to FBR 1007-3;
   (6) Disclosure of Compensation of Attorney for Debtor;
   (7) Summary of Assets and Liabilities for Nom-Individuals; and
   (8) Schedules A-H.

61. As such, this Court has issued a deficiency notice directing the Debtor cure its deficiencies (See ECF No. 3).

62. Debtor's skeletal petition and refiled petition reveals nothing about the Debtor, other than they have erroneously claimed assets of $500,000-$1,000,000.00 and the same amount

of estimated liabilities (*See* ECF Nos. 1, 2)

63. On February 7, 2020, this Court entered an order scheduling a meeting of creditors pursuant to 11 U.S.C. 341 to be held on March 16, 2020 but was adjourned to April 27, 2020 (*See* ECF No. 6).

64. On February 7, 2020, this Court entered an order scheduling an initial case conference for March 11, 2020 which was adjourned without a hearing to April 28, 2020 (*See* ECF No. 7).

65. Debtor's schedules lists Secured Creditor's claim at $0.00 with no valuation of the 3052/3062 Property (*See* ECF No. 15, Schedule D).

66. Debtor's corporate ownership statement incorrectly lists there are no equity holders of Debtor (*See* ECF No. 17). In fact, there is no mention of Miller or Sprei, except a cursory reference in the application to employ Russo, Musso & Weiner LLP as Debtor's counsel where it notes Miller is owner and managing member of the Debtor.

67. However, all of the Debtor's filings are signed by Rubin as President, who has no connection to the 3052/3062 Loan.

68. To date, the Debtor has not prosecuted this bankruptcy case to any meaningful extent, including but not limited to, filing a plan of reorganization or making post-petition payments to the Secured Creditor.

69. In addition, the Debtor has not filed any application with this Court to retain any property management company to manage the 3052/3062 Property.

70. Accordingly, the Debtor's latest bankruptcy filing is nothing more than a delaying tactic.

## RELIEF SOUGHT

71. Pursuant to the Declaration of Shoshana Carmel (the "Carmel Declaration") and the Declaration of the Receiver, Gregory A. Laspina (the "LaSpina Declaration"), the Receiver should be excused from turnover and permitted to continue operations relating to the 3052/3062 Property.

72. At the outset of the Receivership, the Debtor failed to pay the real estate taxes and the 3052/3062 Property was disrepair. More specifically, the Receiver's agents have completed the following repairs and/or improvement to improve the health and safety of the tenants:

   (i)     Installation of garage sprinkler pipe protection;
   (ii)    Replace Rooftop HVAC Units;
   (iii)   Install new heat in the both lobbies;
   (iv)    Painting of residential hallways, garages, and 7th floor deck;
   (v)     Elevator monitoring/repair;
   (vi)    Ceramic tile repairs;
   (vii)   Landscape replacement repair;
   (viii)  Repair garage exhaust system; and
   (ix)    Improve safety signage.

73. According to the LaSpina Declaration, Since the commencement of the receivership the 3052/3062 Property has generated a gross income of approximately $1,973,038.00, required disbursements for expenses to date in the approximate amount of $1,631,236.00. Thus, resources presently available to the Receiver to continue to manage the 3052/3062 Property exists in the approximate sum of $341,802.00. As such, the Receiver is in a position to best serve the tenants.

74. Further, Despite the Receiver's best efforts, the Debtor and its management company, Soft Stone Management Company ("Soft Stone") has attempted to interfere with the Receivership. A copy of this correspondence is annexed hereto as **Exhibit "DD"**.

75. In addition, the Receiver has already implemented safety and security protocols to

protect the 3052/3062 Property from COVID-19 including (but not limited to) deep cleaning. Terminating the Receivership would threaten the health and safety of the tenants.

76. Moreover, the Debtor has not filed an application with this Court to retain a property management company to manage the 3052/3062 Property.

77. Based upon the Debtor's gross mismanagement in the 97 Grand Avenue Bankruptcy Case, interference with the Receiver's operations despite the Receiver Order, and the improvement of the 3052/3062 Property, the Receiver is best equipped to manage the 3052/3062 Property.

78. As such, the Secured Creditor respectfully request that this Court should authorize the Receiver to remain in possession, custody, and control of the Debtor's Property pursuant to 11 U.S.C. § 543(d); (ii) excusing the Receiver from any turnover requirement pursuant to 11 U.S.C. §§ 543(a) and (b), including pending resolution of this motion; (iii) authorizing the Receiver to maintain and operate the 3052/3062 Property in the ordinary course of business and pursuant to the Receivership Order pursuant to 11 U.S.C. § 543(c).

## APPLICATION

79. The Secured Creditor hereby requests that this honorable Court enter an Order: (i) authorizing the Receiver to remain in possession, custody control of the Debtor's Property pursuant to 11 U.S.C. § 543(d); (ii) excusing the Receiver from any turnover requirement pursuant to 11 U.S.C. § 543(a) and (b), including pending resolution of this motion; (iii) authorizing the Receiver to maintain and operate the 3052/3062 Property in the ordinary course of business and pursuant to the Receivership Order pursuant to 11 U.S.C. § 543(c); and (iv) granting such further and different relief as the Court may deem just and proper.

## RESERVATION OF RIGHTS AND NOTICE

80. The Secured Creditor expressly reserves its rights to amend or supplement this Application, to introduce evidence supporting this Application at the hearing on the Application, and to file additional and supplemental response as Secured Creditor deems advisable.

81. Notice of this Application has been provided to the Office of the United States Trustee, Debtor, the Debtor's counsel and to all creditors of the Debtor entitled to notice in this Chapter 11 case. In light of the nature of the relief requested, Secured Creditor submits that no other or further notices need be provided.

82. A proposed order is annexed hereto as **Exhibit "EE"**.

83. No previous application for the relief sought herein has been filed before this Court in this case.

**[SPACE INTENTIONALLY LEFT BLANK]**

**WHEREFORE,** the Secured Creditor respectfully requests the entry of an Order: (i) authorizing the Receiver to remain in possession, custody control of the Debtor's Property pursuant to 11 U.S.C. § 543(d); (ii) excusing the Receiver from any turnover requirement pursuant to 11 U.S.C. § 543(a) and (b), including pending resolution of this motion, (iii) authorizing the Receiver to maintain and operate the 3052/3062 Property in the ordinary course of business and pursuant to the Receivership Order pursuant to 11 U.S.C. § 543(c); and (iv) granting such further and different relief as the Court may deem just and proper.

Dated: New York, New York
March 30, 2020

                KRISS & FEUERSTEIN LLP
                *Attorneys for*
                *3052 Brighton 1st Street II LLC*

                *s/ Jerold C. Feuerstein*
                Jerold C. Feuerstein, Esq.
                Daniel N. Zinman, Esq.
                Stuart L. Kossar, Esq.
                360 Lexington Avenue, 12th Floor
                New York, New York 10017
                (212) 661-2900
                (212) 661-9397 fax
                jfeuerstein@kandfllp.com
                Dzinman@kandfllp.com
                skossar@kandfllp.com