UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:  

    3052 Brighton First, LLC,

                               Debtor.

Chapter 11

Case No. 20-40794-nhl

Hon. Nancy Hershey Lord
United States Bankruptcy Judge

------------------------------------------------------------x

**DECLARATION OF SHOSHANA CARMEL IN SUPPORT
OF 3052 BRIGHTON 1ST STREET LLC'S APPLICATION
<u>TO EXCUSE TURNOVER AND OTHER REQUESTED RELIEF</u>**[1]

Pursuant to 28 U.S.C. § 1746, Shoshana Carmel declares as follows**:**

1.       I am the Director of 3052 Brighton 1st Street II LLC ("<u>3052 Brighton</u>" or "<u>Secured Creditor</u>"), a secured creditor and interested party to this Chapter 11 case and have personal knowledge of the facts of this case and the events that transpired to date based upon the files maintained by the Secured Creditor in the ordinary course of its business.  As such, I am fully familiar with the facts and circumstances of this matter.

2.       As part of my responsibilities for the Secured Creditor, I am familiar with the type of records maintained in connection with the subject loans. The information in this Affidavit is taken from the Secured Creditor's business records, and I have personal knowledge of the Secured Creditor's procedures for creating these records. They are: (a) made at or near the time of the occurrence of the matters recorded by a person with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of the Secured Creditor's regularly conducted business activities; and (c) it is the regular practice of the Secured Creditor to make such records.

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Application in Support of the Entry of an Order Excusing the Receiver from Turnover and Other Requested Relief (the "<u>Application in Support</u>").

1

3.      I submit this Declaration in support of the Secured Creditor's Application for the entry of an Order: (i) authorizing the Receiver Gregory M. LaSpina (the "Receiver") to remain in possession, custody control of the Debtor's Property pursuant to 11 U.S.C. § 543(d); (ii) excusing the Receiver from any turnover requirement pursuant to 11 U.S.C. § 543(a) and (b), including pending resolution of this motion, (iii) authorizing the Receiver to maintain and operate the 3052/3062 Brighton 1st Street, Brooklyn, New York 11235 (Block: 8669, Lot: 18) (the "3052/3062 Property") in the ordinary course of business and pursuant to the Receivership Order entered November 21, 2017 (the "Receivership Order") pursuant to 11 U.S.C. § 543(c); and (iv) granting such further and different relief as the Court may deem just and proper.

4.      By way of this Application, the Secured Creditor seeks to pursue their rights and remedies in connection with a commercial loan.

5.      On March 27, 2014, the Debtor duly executed, acknowledged, and delivered to Signature Bank ("Signature"), an Amended, Consolidated and Restated Mortgage Note (the "Note") in the principal amount of $17,000,000.00 in connection with a commercial loan (the "Loan") (See **Exh. A**).

6.      On March 27, 2014, to secure repayment of the indebtedness evidenced by the Note, the Debtor duly executed, acknowledged, and delivered to Signature, a Mortgage Consolidation, Modification, Security Agreement and Fixture filing in the amount of $17,000,000.00 (the "Mortgage") encumbering the 3052/3062 Property. The Mortgage was recorded on May 6, 2014 in the Office of the City Register of the City of New York, County of Kings (the "City Register") under City Register File No. ("CRFN"): 2014000152240 (See **Exh. B**).

7.      Pursuant to the Mortgage, Secured Creditor is entitled the appointment of a

Receiver, which sets forth in relevant part:

> "… apply for the appointment of a custodian, trustee, receiver, liquidator or conservator of the Mortgage Property, without notice and without regard for the adequacy of the security of the Debtor and without regard for the solvency of the Mortgage, or of any person, party or entity liable for the payment of the Debt…"

(See **Exh. B**, at §2.2(viii)).

8. On March 27, 2014, as further security for the Note, the Debtor's principal, Miller (collectively, with the Debtor, the "Borrowers"), individually, executed, acknowledged, and delivered to Signature, a Limited Personal Guarantee (the "Guarantee"), guaranteeing all obligation under the Loan to Signature (See **Exh. C**).

9. On June 8, 2015, Signature assigned the Note and Mortgage to Secured Creditor pursuant to an Assignment of Mortgage (the "Assignment of Mortgage"), which was recorded in the City Register on June 30, 2015 under CRFN: 2015000224688. (See **Exh. D**).

10. In addition, on June 8, 2015, the Note was endorsed to the Secured Creditor as evidenced by the allonge (the "Allonge") affixed to the Note dated June 8, 2015 (See **Exh. A**).

11. Secured Creditor has been in actual physical possession of the original Note with allonge firmly affixed thereto, Mortgage, Guarantee and any and all other loan documents (collectively, the "Loan Documents") evidencing the Loan since June 8, 2015 through the date of this Affidavit.

12. On September 18, 2014, 3052 Brighton 1st Street LLC (the "First Mezz Lender"), and affiliate of Secured Creditor, made a first mezzanine loan in the sum of $9,000,000.00 (the "First Mezz Loan") to 3052 Brighton MB LLC (the "Brighton Mezz Borrower"), 203-205 N8 MB LLC and 97 Grand MB LLC (collectively the "First Mezz Borrowers") pursuant to a Mezzanine Loan Agreement (the "First Mezzanine Loan Agreement") (See **Exh. E**)

13. On September 18, 2014, the First Mezz Borrowers duly executed, acknowledged,

and delivered to the First Mezz Lender a Secured Promissory Note (the "First Mezz Note") in the principal amount of $9,000,000.00 in connection with the First Mezz Loan (See **Exh. F**).

14. On September 18, 2014, to secure repayment of the indebtedness evidenced by the First Mezz Note, the Debtor[2] duly executed, acknowledged, and delivered to the First Mezz Lender a Collateral Mortgage and Security Agreement in the amount of $9,000,000.00 (the "First Mezz Mortgage") encumbering the 3052/3062 Property which was recorded on July 28, 2015 in the City Register under CRFN: 201500257783 (See **Exh G**).

15. On September 18, 2014, as further security for the Mezz Note, the Debtor duly executed, acknowledged, and delivered to the First Mezz Lender a Guaranty (the "First Mezz Guaranty") guaranteeing all obligations under the First Mezz Loan to the First Mezz Lender (See **Exh. H**).

16. The First Mezz Mortgage and the First Mezz Loan Agreement provided, *inter alia*, that the First Mezz Mortgage was cross-defaulted with the Mortgage (and other mortgages), such that a default under the Mortgage was a default under the First Mezz Mortgage (See **Exh. E**, at §60; **Exh. G** at §11).

17. The Mezz Lender is now in actual physical possession of the original First Mezz Note, First Mezz Mortgage, First Mezz Guaranty and any and all other loan documents (collectively, the "First Mezz Loan Documents") evidencing the First Mezz Loan since September 18, 2014 through the date of Affidavit.

18. On September 18, 2014, 203-205 N 8th Street LLC ("Second Mezz Lender" and together with First Mezz Lender, the "Mezz Lenders"), another affiliate of the Secured Creditor, made a second mezzanine loan to Brighton Mezz Borrower, 203-205 )North 8th Street Loft LLC

---

[2] The First Mezz Borrowers are affiliates of the Debtor owned and/or controlled by Miller and Sprei (See Also, **Exh. N,** Schedule A)..

4

("203-205"),[3] and 97 Grand MB LLC (collectively, the "Second Mezz Borrowers") in the principal amount of $3,000,000.00 (the "Second Mezz Loan" and together with the First Mezz Loan, the "Mezz Loans") pursuant to a Mezzanine Loan Agreement (the "Second Mezzanine Loan Agreement") (See **Exh I**).

19. On September 18, 2014, the Second Mezz Borrowers duly executed, acknowledged, and delivered to the Second Mezz Lender a Secured Promissory Note in the principal sum of $3,000,000.00 (the "Second Mezz Note" and together with the First Mezz Note, the "Mezz Notes") (See **Exh J**).

20. On September 18, 2014, to secure repayment of the indebtedness evidenced by the Second Mezz Note, 203-205 duly executed, acknowledged, and delivered to the Second Mezz Lender a Mortgage and Security Agreement in the amount of $3,000,000.00 (the "Second Mezz Mortgage") encumbering the real property located at 203-205 North 8th Street, Brooklyn, New York 11211 which was recorded on November 7, 2014 in the City Register under CRFN: 2014000369345 (See **Exh K**).

21. On September 18, 2014, as further security for the Second Mezz Note, Miller duly executed, acknowledged, and delivered to the Second Mezz Lender a Guaranty (the "Second Mezz Guaranty") guaranteeing all obligations under the Second Mezz Loan to the Second Mezz Lender (See **Exh. L**).

22. The Second Mezz Mortgage and the Second Mezz Loan Agreement provided, *inter alia*, that the Second Mezz Mortgage was cross-defaulted with the Mortgage (and other mortgages), such that a default under the Mortgage was a default under the First Mezz Mortgage. (See **Exh. I**, at §60; **Exh. K** at §11).

---

[3] 203-205 North 8th Loft LLC has filed a related petition for relief under Chapter 11 of the Bankruptcy Code (See Case No. 20-40794-nhl) in which the Second Mezz Lender has also filed a similar application simultaneously.

23. The Second Mezz Lender is now the owner and holder of the original Second Mezz Note, Second Mezz Mortgage, Second Mezz Guaranty and any and all other loan documents (collectively, the "Second Mezz Loan Documents") evidencing the Second Mezz Loan as of September 18, 2014 through the date of this Affidavit.

24. The Debtor defaulted under Loan Documents by failing to remit the monthly payment due on April 1, 2015, and each payment thereafter (the "Default") (See **Exh M**).

25. As a result of the Default, pursuant to the terms of the Loan Documents, Secured Creditor declared the balance of the principal indebtedness immediately due and payable and commenced a mortgage foreclosure action (the "Foreclosure Action") in the Supreme Court of the State of New York, County of Kings (the "State Court") under Index No. 509304/2015 in the matter originally styled *3052 Brighton 1st Street II LLC v. 3052 Brighton First LLC, et al.* The Summons ("Summons") and Complaint (the "Complaint") were filed with the Kings County Clerk on July 29, 2015 (See **Exh. M**).

26. On October 29, 2015, Secured Creditor, the Debtor and Miller, entered into a Stipulation of Forbearance in Foreclosure Action (the "Forbearance Stipulation"), which provided, *inter alia*:

- Debtor acknowledged the validity of the Loan Documents and the Default (*see id*. at ¶¶ 1-2);
- Debtor waived all defenses to the Foreclosure Action (*see id*. at ¶¶ 2-3);
- Debtor acknowledged the indebtedness to Secured Creditor under the Loan Documents (*see id*. at ¶ 4);
- Secured Creditor agreed to accept a discounted payoff for the Loan only if payment was made on or before the Termination Date of January 15, 2016 (*see id*. at ¶ 6);
- Debtor consented to immediate entry of the judgment of foreclosure and sale (*see id*. at ¶7);
- Debtor agreed that Secured Creditor may continue prosecute the Foreclosure Action in order to obtain a judgment of foreclosure and sale (*see id*. at ¶ 9); and
- Debtor acknowledged that it does not rely upon any oral representation of Secured Creditor in entering into the Forbearance Stipulation, and that the

> Forbearance Stipulation can only be amended by a signed writing (*see id*. at ¶ 20).

(See **Exh. N**).

27. However, as further stated below, the Debtor violated the terms of the Stipulation by failing to make the discounted payoff for the Loan and by engaging in vexatious motion practice.

28. By order entered November 21, 2017, Hon. David B. Vaughan, J.S.C. ("Justice Vaughan"), over the applications of the Debtor to vacate its default, granted a Judgment of Foreclosure and Sale (the "JFS") in favor of Secured Creditor, entitling Secured Creditor to foreclose upon the 3052/3062 Property and awarding Secured Creditor, *inter alia*, the sum of $18,977,604.50, plus interests and costs (*See* NYSCEF Nos. 49-87, 92-108, 159-170).[4] The JFS also provides that surplus rights are granted on account of the First Mezz Mortgage where if there is a surplus over the amounts due to Secured Creditor after a sale of the 3052/3062 Property, the surplus is immediately paid to the First Mezz Lender (See **Exh. P**).

29. By order entered November 21, 2017, Justice Vaughan over the opposition of the Debtor, issued an order (the "Receivership Order"), *inter alia*, appointing Gregory LaSpina, Esq. as Receiver (the "Receiver") of the 3052/3062 Property (*See* NYSCEF Nos. 109-158) (See **Exh. Q**).

30. On December 4, 2017, the Debtor filed its *first* application by order to show cause seeking to vacate the JFS (the "First OSC"), which opposed by the Secured Creditor but ultimately withdrawn at oral argument by counsel for the Debtor after Justice Vaughan's law clerk noted the Debtor failed to provide any new evidence and failed to identify what Justice Vaughan allegedly

---

[4] "NYSCEF" refers to the document numbers on the New York State Courts Electronic Filing System for the Foreclosure Action. In the interest of judicial economy, where applicable, the Application references the NYSCEF No. provided on the document list annexed to the Application **Exhibit "O"**.

7

overlooked or misapprehended when granting the JFS in favor of Secured Creditor (*See* NYSCEF Nos. 179-192, 198, 202).

31. On April 12, 2018, Secured Creditor scheduled a sale for June 14, 2019 (*See* NYSCEF No. 207).

32. By order entered May 25, 2018 (the "Second OSC Denial Order"), Justice Vaughan denied Debtor's *second* order to show cause to vacate the JFS (the "Second OSC"), noting *inter alia*, that the Debtor failed to provide any legal of factual basis to vacate the JFS (See **Exh. R**).

33. On June 1, 2018, the Debtor filed a Notice of Appeal of the Second OSC Denial Order (*See* NYSCEF No. 235).

34. On June 7, 2018, the Debtor filed its *third* order show cause for a discretionary stay pending appeal ("OSC for stay pending appeal") pursuant to CPLR 5519 which was opposed by Secured Creditor (*See* NYSCEF No. 236-252).

35. On June 25, 2018, Secured Creditor scheduled a sale for August 2, 2018 (*See* NYSCEF No. 253).

36. By order entered July 31, 2018, Justice Vaughan, denied the OSC for a stay pending appeal (the "OSC for Stay Pending Appeal Denial Order") (See **Exh. S**).

37. By order entered August 27, 2018, the Appellate Division, Second Department (the "Second Department"), entered an order, denying the Debtor's *fourth* order to show cause for a stay of enforcement of the Second OSC Denial Order (See **Exh. T**).

38. On September 11, 2018, the Secured Creditor scheduled a sale for October 11, 2018 (*See* NYSCEF No. 265).

39. On October 10, 2018, without any avenue to attack the JFS, the Debtor's *fifth* Order to Show Cause (the "Discovery OSC"), sought to depose their prior counsel which was opposed

by Secured Creditor (*See* NYSCEF No. 270-296).

40. On July 22, 2019, Debtor filed its *سixth* Order to Show Cause to vacate the JFS was again withdrawn at oral argument against Justice's Vaughan's law clerk advised that the application was inappropriate because it did not seek leave to renew or reargue the Second OSC denial order.

41. By order dated November 6, 2019, (the "Discovery OSC Order"), Justice Vaughan ultimately adjudicated the Discovery OSC by permitting a deposition of their prior counsel prior to the next foreclosure sale date. In addition, due to the Debtor's vexatious tactics, the Debtor was directed to pay on or before November 20, 2019, costs adjourning the foreclosure sale, including attorneys' fees in the amount of $4,500.00 for the related court appearance and publication costs associated with prior foreclosures sale. The Discovery OSC Order also set forth that the failure to complete the deposition is not to serve as a further basis to stay or adjourn the Foreclosure Sale (See **Exh. U**).

42. By Order dated December 18, 2019 (the "Second Discovery OSC Order"), Justice Vaughan adjudicated the Debtor's *seventh* order to show cause (the "Second Discovery OSC") and Secured Creditor's motion for a protective order directing a further deposition of the Debtor's prior counsel with respect to an email on before January 17, 2020 and all costs in the Discovery OSC order are to be paid to Secured Creditor (See **Exh. V**).

43. On December 31, 2019, Secured Creditor scheduled a sale of the 3052/3062 Property for February 6, 2020 (the "Foreclosure Sale") (See **Exh. W**).

44. On January 30, 2020, the Debtor filed its *eighth* order to show cause for further non-meritorious discovery, which was opposed by the Secured Creditor (*See* NYSCEF No. 439-457, 460-478).

45. After oral argument on February 6, 2020, Debtor's eighth OSC was denied in its entirety. A copy of the February 6, 2020 order the "February 2020 OSC Denial Order", which notes, *inter alia*:

> "Defendant's contentions concerning the conduct of former counsel are insubstantial and speculative. Movant's other contentions also lack merit. The instant osc is the latest thinly veiled attempt to once against delay/defeat this already too often delayed proceeding. Accordingly, osc is denied. All stays vacated. Auction may proceed as scheduled.

(See **Exh. X**)

46. On the same date, the Second Department also denied the Debtor's *ninth* OSC for a stay pending.

47. On December 28, 2015, Chun Peter Dong ("Dong"), an alleged creditor of the 97 Grand Avenue LLC ("97 Grand"), caused an involuntary petition for Chapter 7 bankruptcy relief (the "Involuntary Case") to be filed against 97 Grand before the United States Bankruptcy Court for the Southern District of New York (Case No. 15-13367-shl) (the "97 Grand Bankruptcy Case").

48. On April 13, 2016, the Bankruptcy Court entered an Order, granting the Debtor's motion to convert the Involuntary Case to a voluntary proceeding under Chapter 11 [97 Grand ECF No[5]. 22].

49. 97 Grand's refiled petition was executed by Miller (See **Exh. Z**).

50. On October 14, 2016, Hon. Sean H. Lane ("Judge Lane") entered a Stipulation and Order (the "Cash Collateral Order") between 97 Grand and 97 Grand Avenue Brooklyn First LLC ("Brooklyn First") (97 Grand's largest pre-pre-petition creditor) Authorizing the Debtor's Interim Use of Cash Collateral Pursuant to § 363 and Providing Adequate Protection Pursuant to §§ 361 and 362 (97 Grand ECF No. 80) (See **Exh. AA**).

---

[5] References to "97 Grand ECF No." refers to the docket entries in the 97 Grand Bankruptcy Case (See **Exh. Y**).

51. The Cash Collateral Order, *inter alia*, required that 97 Grand begin tendering monthly payments to the Brooklyn First from 97 Grand's use of the Secured Creditor's cash collateral from July 2016 through October 2016 (See *id*). In addition, the Cash Collateral Order required that 97 Grand file and serve a plan of reorganization and a disclosure statement by or before October 31, 2016, which 97 Grand was to seek confirmation on or before November 30, 2016 (See *id*).

52. 97 Grand failed to tender a single timely payment to the Brooklyn First and failed to file any plan or disclosure statement (See **Exh. BB).**

53. More alarmingly, it came to the attention of the United States Trustee and Brooklyn First that 97 Grand (controlled by Miller and Sprei) were engaged in gross-mismanagement of 97 Grand's Estate by making payments to insiders in the aggregate, but unauthorized and unexplained sum of $449,968.47. Accordingly, both the United States Trustee filed application to convert the case to one under Chapter 7 and Brooklyn First filed an application (the "Chapter 11 Trustee Application") seeking, *inter alia,* appointment of a Chapter 11 Trustee (See **Exh. BB**).

54. On January 10, 2017, after a hearing a was held, Judge Lane entered an order ("Chapter 11 Trustee Order"), *inter alia*, directing an appointment of a Chapter 11 Trustee due to the unauthorized and improper depletion and disbursements of substantial funds of 97 Grand's Estate to 97 Grand's insiders (See **Exh. CC**).

55. On February 6, 2020, (the "Petition Date"), the Debtor filed a Petition (the "Petition") for relief under for Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") before the United States Bankruptcy Court for the Eastern District of New York (Case No. 20-40794-nhl) (the "Bankruptcy Case"). As such, the Foreclosure Sale was stayed.

56. The Secured Creditor has not received any payments during the pendency of the

bankruptcy case and the Debtor has failed to cure its default under the terms and the provisions of the Loan Documents.

57. Accordingly, the Debtor's latest bankruptcy filing is nothing more than a delaying tactic.

58. The Secured Creditor also believes the Receiver is in the best position to remain in control of the 3052/3062 Property. At the outset of the Receivership, the 3052/3062 Property real estate taxes were not paid and the 3052/3062 Property was in disrepair. Since the Receivership began, the Receiver has significantly improved the health and safety of the tenants. In addition, due to the successful management and funds in his possession, the Receiver will be well-equipped to continue these efforts.

**[SPACE IS INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, Secured Creditor respectfully request this Court enter an Order granting the Application in its entirety together with such other and further relief as this court deems just and proper.

Dated: New York, New York
       March 27, 2020

_____
Name: Shoshana Carmel
Title: Director