# EXHIBIT 1

**(Immediately Follows This Page)**

July 31, 2020

Rosewood Realty Group
Attn: Aaron Jungreis
President
38 East 29th Street, 5th Floor
New York, NY 10016

Re: **Exclusive Right to Sell Agreement for 3052/3062 Brighton 1st Street, Brooklyn, New York (the "Property")**

Dear Mr. Jungreis:

By executing this letter agreement (the "*Agreement*"), and subject to Bankruptcy Court approval, Madison Realty Capital, (together with its affiliates (*e.g.*, 3052 Brighton 1st Street II LLC and 3052 Brighton 1st Street LLC) "*Client*") hereby appoints Rosewood Realty Group ("*Rosewood*") as Client's sole agent and grant(s) to Rosewood the exclusive right to arrange the sale of the Property. For the purposes of this Agreement, the term "*sale*" or "*sells*" shall include a disposition of the entire Property, including, without limitation, development and air rights appurtenant thereto. This Agreement is subject to the following terms and conditions:

1. The term of this Agreement shall commence on the date hereof and shall continue for a period of ninety (90) calendar days (the "*Exclusive Period*"). The Exclusive Period shall automatically extend for additional periods of thirty (30) days unless terminated by either party at least thirty (30) days prior to the end of the then applicable Exclusive Period. The bankruptcy auction is expected to take place in October, 2020, and Rosewood agrees to use its best efforts to ensure a sale of the Property will consummated promptly thereafter.

2. Rosewood, subject to Client's reasonable approval, shall prepare a marketing brochure, offering package or similar marketing materials ("*Marketing Materials*") for distribution to prospective purchasers based on documentation and information provided by Client. Client acknowledges and consents to Rosewood's intention to disseminate the Marketing Materials to prospective purchasers, and as such represents and warrants that, to the best of Client's knowledge, any documentation and information supplied by Client shall be complete and accurate and shall be updated and/or corrected as necessary. Client further consents to Rosewood using its name and logo in any "tombstone" or other advertisement announcing the successful consummation of any of the transactions contemplated hereunder.

3. During the Exclusive Period, Client will refer all inquiries and offers received with respect to the Property to Rosewood, regardless of the source thereof, and all negotiations shall be conducted jointly between Client and Rosewood. Rosewood may, in its reasonable discretion, solicit the cooperation of other qualified licensed real estate brokers as appropriate; provided, however, that in no event shall Rosewood be required to share the Commission with any cooperating broker unless such cooperating broker (i) delivers the final purchaser, (ii) is a licensed real estate broker in the state of New York, and (iii) has properly registered with Rosewood on a form reasonably acceptable to Rosewood (any cooperating broker meeting such requirements, a "*Cooperating*

*Broker*"). Rosewood has no authority to enter into an agreement on Client's behalf and will make no such representation to any prospective purchaser. Rosewood shall be entitled to a full Commission in the event that Client sells the Property during the Exclusive Period, to any party, whether or not such party dealt directly with Rosewood.

4. Rosewood recognizes that the sale of the Property is being conducted in connection with 3052 Bright 1st Street LLC and 3052 Brighton 1st Street II LLC's Plan of Liquidation for the 3052 Brighton First, LLC (the "*Debtor*") [ECF No. 55] (as may be amended, the "*Plan*"). In connection therewith, the Client has submitted to the Bankruptcy Court for approval the Disclosure Statement for the Plan [ECF No. 56] (as may be amended, the "*Disclosure Statement*"). In connection with the approval of the Disclosure Statement, the Client has submitted bidding procedures for the Bankruptcy Court's approval. Rosewood has reviewed, agrees with and agrees to follow and implement such bidding procedures as will be approved by the Bankruptcy Court. Rosewood understands and agrees that the sale of the Property, and the payment of its Commissions and reimbursement of its costs and expenses, are dependent on the Bankruptcy Court's approval of, among other things, the bidding procedures and the Disclosure Statement and the Bankruptcy Court's confirmation of the Plan.

5. Rosewood shall be entitled to a full Commission in the event that Client sells the Property (i) during the Exclusive Period, to any party, whether or not such party dealt directly with Rosewood, or (ii) during the twelve (12) months immediately following the Exclusive Period (the "*Tail Period*"), to any party (including any affiliate or subsidiary thereof) with whom Rosewood dealt with (each, a "*Prospect*") during the Exclusive Period. Rosewood shall submit a list of Prospects to Client no later than fourteen (14) days following the expiration or termination of this Agreement.

6. Rosewood's commission (the "*Commission*") in connection with a sale of the Property shall be in an amount equal to: (a) $100,000 in the event of a sale to the Client or its nominee; or (b) two percent (2.00%) of the gross sales price (*i.e.*, without deduction for closing expenses, adjustments or costs of any kind) in the event of a sale to any other person. The Commission shall be deemed earned upon the execution of a contract of sale (or other similar agreement) for the Property, shall be due and payable at closing and shall be paid by the buyer of the Property as a premium in addition to the gross sales price. Rosewood, in all events, shall be entitled to the Commission so long as Client signs a written agreement for the sale of the Property during either the Exclusive Period or Tail Period, whether or not the Client utilizes Rosewood's services, even if the closing does not occur until after the expiration or termination thereof. In addition to the Commission, Rosewood shall be entitled to reimbursements to any actual costs and expenses incurred in connection with the procurement of a purchaser of the Property. Notwithstanding anything herein to the contrary, the sale of the Property and the Commissions and such actual costs and expenses must be approved by the Bankruptcy Court prior to the payment of the Commissions and such actual costs and expenses unless and to the extent the Bankruptcy Court rules otherwise. Client represents that no other broker or finder shall be entitled to any fee or commission for the sale of the Property, except as provided herein to a Cooperating Broker.

7. Client also understands that Rosewood will not advise it as to the legal or tax effects of any transaction, and that the Client should, if it has not done so already, promptly engage legal and tax professionals to advise it as to all such matters with respect to the Property. Rosewood shall have

no obligation to investigate conditions on or the condition of the Property, nor the financial stability or capability of any prospective purchaser, and Client understand that it should engage technical staff and other analytical personnel to advise and assist therewith.

8. In the event Rosewood cooperates with another licensed real estate broker, before working with such broker, Rosewood will inform such broker that it must either (i) look to its client for any and all compensation which may become due to it for the proposed transaction or (ii) be a Cooperating Broker. Except as expressly set forth herein, it is acknowledged that Rosewood shall not be required to share its Commission hereunder with any other broker that is not a Cooperating Broker.

9. To the fullest extent permitted by applicable law, Client shall indemnify and hold Rosewood and its employees, agents, successors, and assigns (each a "*Covered Person*") from and against any and all losses, claims, demands, liabilities, expenses, judgements, fines, settlements and other amounts arising from any and all claims, demands, actions, suits, proceedings, civil, criminal, administrative or investigative in which the Covered Person may be involved, or threatened to be involved; as a party or otherwise, relating to or arising out of this Agreement, except that no Covered Person shall be entitled to such indemnification with respect to any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence, willful misconduct or willful breach of this Agreement.

10. Rosewood shall not be liable for incidental, punitive, exemplary, indirect or consequential damages, or lost profits arising under or relating to this Agreement. Rosewood's liability for any damages or other monetary amounts relating to this Agreement shall not exceed the total fees received by Rosewood under this Agreement.

11. This Agreement shall be binding upon the parties hereto and their respective successors and assigns, subject to approval of the Bankruptcy Court. Neither party shall have the right to assign this Agreement without the consent of the other party.

12. Rosewood has reviewed a list of the creditors, the Debtor, other parties and potential parties in interest, and the United States Trustee or any person employed in the office of the United States Trustee and represents and warrants that it is "disinterested" and has no "adverse interest," as such terms are used in 11 U.S.C. § 327, and has no connections with such entities. Rosewood will supply the Plan Proponents with an affidavit in support of its retention that includes such representations.

13. This Agreement shall be deemed to have been made under and be construed in accordance with the laws of the State of New York. The parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the Eastern District of New York, for the resolution of any disputes that arise under this Agreement. In the event that any action, suit or other proceeding in law or in equity is brought in connection with any term or provision in this agreement, and such action results in the award of a judgment for money damages or in the granting of any injunction or restraining order, all expenses (including reasonable attorneys' fees) of the prevailing party in such action, suit or other proceeding shall be paid promptly by the non-prevailing party.

14. Rosewood represents and warrants that it is duly licensed under the laws of the State of New York as a real estate broker and Rosewood agrees that it shall maintain in good standing and renew such

license(s) throughout the term of this Agreement. Client represents that that the person executing this Agreement has the full power and authority to validly bind Client to the terms and conditions hereof.

15. This Agreement incorporates the entire understanding of the parties with respect to this engagement of Rosewood by the Client and supersedes all previous agreements regarding such engagement, should they exist, and shall be governed by, and construed and enforced in accordance with, the laws of the State of New York (without regard to conflicts of law principles). If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included. This Agreement may not be modified or amended except by a written agreement duly executed by the parties hereto.

16. This Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument. Facsimile and portable document format (PDF) signatures are acceptable to effectuate the terms of this Agreement.

If the foregoing accurately sets forth our agreement, please sign and return the enclosed copy of this letter.

Very truly yours,

**CLIENT:**

**MADISON REALTY CAPITAL**

By: _____
   Name:   Joshua Zegen
   Title:   Authorized Signatory

Agreed To:

**ROSEWOOD CAPITAL GROUP, LLC**

By: _____
   Name:  Peter Leung
   Title:  Director, Legal