1

2  UNITED STATES BANKRUPTCY COURT

3  EASTERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6  203-205 NORTH 8TH STREET LOFT, LLC,     Case No. 20-40793-nhl

7          Debtor.

8  - - - - - - - - - - - - - - - - - - - -x

9  In the Matter of:

10  3052 BRIGHTON FIRST, LLC,              Case No. 20-40794-nhl

11          Debtor.

12  - - - - - - - - - - - - - - - - - - - -x

13

14

15              United States Bankruptcy Court

16              271-C Cadman Plaza East

17              Brooklyn, New York

18

19              March 23, 2021

20

21

22

23  B E F O R E:

24  HON. NANCY HERSHEY LORD

25  U.S. BANKRUPTCY JUDGE

1

2  Confirmation Hearing (20-40793-nhl)

3

4  Adj [10] Adj Status Conference (20-40793-nhl)

5

6  Adj [113] Motion for Entry of An Order Approving Sale

7  Procedures Relating to the Sale of the Debtor's Real Property

8  Pursuant To Bankruptcy Code Sections 105(a), 327, 328, 1123 and

9  Bankruptcy Rules 2002 and 6004 (20-40793-nhl)

10

11  Adj [117] Motion to Authorize/Direct Proponents Motion for

12  Entry of an Order Approving the Retention of Rosewood Realty

13  Group as Broker for the Sale of the Debtors Real Property filed

14  by Jerold C Feuerstein on behalf of 203-205 N 8th Street LLC,

15  3052 Brighton 1st Street LLC, North 8th Investor LLC (20-40793-

16  nhl)

17

18  Adj [119] Amended Motion for Costs/Atty Fees of Receiver filed

19  by Jason Sackoor on behalf of Gregory LaSpina, Receiver (RE:

20  related document(s) Adj [96] Motion for Costs/Atty Fees filed

21  by Gregory LaSpina, Receiver) (20-40793-nhl)

22

23  [125] Second Amended Motion for Costs/Atty Fees of Receiver

24  filed by Gregory M LaSpina on behalf of Gregory LaSpina,

25  Receiver (RE: related document(s)96 Motion for Costs/Atty Fees

1

2  filed by receiver Gregory LaSpina, Receiver, 119 Motion for

3  Costs/Atty Fees filed by receiver Gregory LaSpina, Receiver)

4  (20-40793-nhl)

5

6  Confirmation Hearing (20-40794-nhl)

7

8  Adj [10] Status Conference (20-40794-nhl)

9

10  Adj [113] Motion For Entry of An Order (I) Approving the

11  Retention of Rosewood Realty Group as Broker And (II) Approving

12  Sale Procedures Relating to the Sale of the Debtor's Real

13  Property Pursuant To Bankruptcy Code Sections 105(a), 363, 1123

14  And Bankruptcy Rules 2002 and 6004 (20-40794-nhl)

15

16  Adj [115] Amended Motion to Authorize/Direct Motion For Entry

17  of An Order (I) Approving the Retention of Rosewood Realty

18  Group as Broker And (II) Approving Sale Procedures Relating to

19  the Sale of the Debtors Real Property Pursuant To Bankruptcy

20  Code Sections 105(a), 363, 1123 And Bankruptcy Rules 2002 and

21  6004. (RE: related document(s)[113] Motion to Authorize/Direct

22  filed by Creditor 3052 Brighton 1st Street II LLC, Creditor

23  3052 Brighton 1st Street LLC) (20-40794-nhl)

24

25

1

2   Adj [128] Amended Motion for Costs/Atty Fees of Receiver Filed

3   by Jason Sackoor on behalf of Gregory LaSpina, Receiver (RE:

4   related document(s) Adj [95] Motion for Costs/Atty Fees filed

5   by Gregory LaSpina, Receiver) (20-40794-nhl)

6

7   [136] Second Amended Motion for Costs/Atty Fees of Receiver

8   filed by Gregory M LaSpina on behalf of Gregory LaSpina,

9   Receiver (RE: related document(s)95 Motion for Costs/Atty Fees

10   filed by receiver Gregory LaSpina, Receiver, 128 Motion for

11   Costs/Atty Fees filed by receiver Gregory LaSpina, Receiver)

12   (20-40794-nhl)

13

14

15

16

17

18

19

20   Transcribed by:  Delores Gauntlett

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24   (973)406-2250

25   operations@escribers.net

1

2 A P P E A R A N C E S :

3 ROSENBERG, MUSSO & WEINER, LLP

4        Attorneys for Debtors

5        26 Court Street

6        Suite 2211

7        Brooklyn, NY 11242

8

9 BY:   BRUCE WEINER, ESQ. (TELEPHONICALLY)

10

11

12 KRISS & FEUERSTEIN LLP

13        Attorneys for of 203-205 North 8th Street LLC and

14         3052 Brighton First Street LLC

15        360 Lexington Avenue

16        Suite 1200

17        New York, NY 10017

18

19 BY:   JEROLD C. FEUERSTEIN, ESQ. (TELEPHONICALLY)

20        DANIEL Z. ZINMAN, ESQ. (TELEPHONICALLY)

21

22

23

24

25

1

2   PICK & ZABICKI LLP

3         Attorneys for Leonard Robertson

4         369 Lexington Avenue

5         Suite 1200

6         New York, NY 10017

7

8   BY:   DOUGLAS PICK, ESQ.

9

10

11   UNITED STATES DEPARTMENT OF JUSTICE

12         Office of the United States Trustee

13         201 Varick Street

14         Suite 1006

15         New York, NY 10014

16

17   BY:   NAZAR KHODOROVSKY, ESQ. (TELEPHONICALLY)

18

19

20   ALSO PRESENT:

21         SHOSHANA CARMEL, Director of 203-205 N8th Street LLC

22         and North 8th Investor LLC (TELEPHONICALLY)

23         GREGORY M. LASPINA, Temporary Receiver (TELEPHONICALLY)

24

25

1                    P R O C E E D I N G S

2            THE COURT:  The next matter in the case of 203-205

3    North 8th Street Loft, LLC, and 3052 Brighton First, LLC.

4            THE CLERK:  Appearances?

5            MR. WEINER:  Bruce Weiner, Rosenberg & Musso Weiner,

6    for the Debtors.

7            MR. FEUERSTEIN:  Good afternoon, Your Honor.  Jerold

8    Feuerstein from Kriss & Feuerstein on behalf of the secured

9    creditors.  Dan Zinman from my firm is on the call as well, as

10   well as Shoshana Carmel, who is here in case we need to make a

11   proffer with respect to confirmation on North 8th.

12           MR. PICK:  And finally, Douglas Pick on behalf of

13   Leonard Robertson, a proposed trust representative, 3052

14   Brighton.

15           MR. LASPINA:  Good afternoon, Your Honor.  Gregory M.

16   LaSpina, Borchert & LaSpina, temporary court receiver.

17           MR. KHODOROVSKY:  Good afternoon, Your Honor.  May it

18   please the Court, Nazar Khodorovsky for the United States

19   Trustee.  Thank you so much, Your Honor.

20           THE COURT:  So I'm a little unclear.  I mean, I'm

21   not -- I mean, I know you filed the -- on 203-205 North 8th, I

22   know you filed a brief in support of confirmation and the like,

23   but I also understood that this might be adjourned but

24   obviously wasn't if you have some sort of -- you signed some

25   settlement papers you are waiting for -- it sounds like you're

1  waiting for a while for payment.  Somebody wants to bring me up
2  to date on that and the--
3          MR. FEUERSTEIN:  Your Honor, yeah, this is Jerold
4  Feuerstein, and Mr. Weiner can confirm this.  So we have a
5  settlement agreement that was signed by the debtor, the debtor
6  was supposed to wire a certain sum because I don't think it's
7  appropriate to disclose anything, Your Honor, with respect to
8  the settlement yet --
9          THE COURT:  Right.
10         MR. FEUERSTEIN:  -- but supposed to wire a certain sum
11 in connection with signing that agreement to debtors' counsel.
12 Debtors' counsel has indicated to us that he has a fed
13 reference number, but that has not yet confirmed the wire.
14 We're also told that only half of that sum was being wired
15 today, and the other half is supposed to be wired on Thursday.
16         The secured creditor at this point, if Your Honor will
17 indulge us, would like to move forward with our presentation
18 for confirmation but ask the Court that if this wire hits by
19 Friday, that Your Honor will agree that the confirmation order
20 will not be entered, so we can -- so Mr. Weiner can file a
21 motion under 9019 to confirm the settlement agreement, and we
22 can confirm the plan and the disclosure statement with respect
23 to North 8th to include the settlement agreement.
24         THE COURT:  Potentially, you want me to do all that
25 work for nothing, but I have a -- I have a threshold --

1            MR. KHODOROVSKY:  Your Honor?

2            THE COURT:  I have a threshold problem.  Go ahead,

3    Mr. -- I have a problem before that on service, which I want to

4    talk about.  Go ahead, Mr. Khodorovsky.

5            MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

6    the U.S. Trustee.  I apologize, truly, Your Honor.  I am a

7    little bit confused.  Is Counsel indicating that if the

8    settlement is approved, there's going to be another

9    confirmation hearing on an amended plan, on a further amended

10   plan?  I apologize.  I just wanted to clarify.

11           MR. FEUERSTEIN:  Well, Your Honor.  Yes, because the

12   way --

13           THE COURT:  Can you, please, state your name first

14   when you speak.

15           MR. FEUERSTEIN:  Your Honor, sorry.  It's Jerold

16   Feuerstein.  I mean the thought is not necessarily an amended

17   plan, that if Your Honor does not sign the order, even though

18   we can go forward with our presentation today, we'd want Your

19   Honor to sign the order -- not to go forward with our

20   presentation.  Your Honor could hold her decision in abeyance

21   until we inform the Court as to whether we plan on going

22   forward with the amended plan based upon the settlement

23   agreement so we would not have to -- so we'd not have to amend

24   the plan, as opposed to confirming a plan and then amending it.

25           THE COURT:  Mr. Khodorovsky, I would prefer --

1          MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky, for

2     the U.S. Trustee --

3          THE COURT:  -- I was clear before you asked the

4     question, Mr. Khodorovsky.  Now, I'm confused.

5          MR. KHODOROVSKY:  Your Honor, I'm also confused very

6     much, Your Honor.  I still am not sure whether there is going

7     to be a further amended plan filed if the settlement is

8     approved, or --

9          MR. FEUERSTEIN:  Yes.

10         MR. KHODOROVSKY:  -- or will it be approved today --

11         MR. FEUERSTEIN:  Yes.  Yes, Your Honor.  The point is,

12    is that, yes, there will be a further amended plan approved but

13    not an amendment to the confirmation order.  So yes, if the

14    settlement is in fact -- if the settlement goes through and

15    Your Honor approves the settlement, we would file an amended

16    plan.

17         THE COURT:  Okay.  Let me make this nice and easy.

18    The service of your solicitation package, on the face of it,

19    doesn't appear proper to me.  I feel like there's a deficiency,

20    unless I'm missing an affidavit of service.  The affidavit of

21    service at ECS 112 reflects that the solicitation package was

22    served by mail on December 29th, 2020, upon three parties only.

23    And they're not parties whom I know.  I was going to ask if

24    they were the commercial tenants, but I have the names.

25         Critically, service was not made upon the debtor, the

1  debtor's counsel, the U.S. Trustee, or creditors.  It wasn't

2  made upon these three entities, again, who are -- let me find

3  their names.  Hold on here a second.  Hold on.

4          Ashlynn (ph.), where is it in this write-up?  Where

5  are the names of those three people or entities?

6          THE CLERK:  Yes.  The name of those three entities

7  are:  REO or R-E-O Properties Corporation (ph.); and then Law

8  Offices of Vincent S. Wong, care of  Sam Snag Tang (ph.); and

9  then again, Law Offices of Vincent S. Wong, care of T. Ken Lin

10 (ph.).

11         THE COURT:  Okay.  So that's the affidavit of service

12 I have.  I don't have the affidavit of service on the debtor,

13 the debtor's counsel, the U.S. Trustee, the creditors who filed

14 claims, the creditors who are listed on the schedule.  We

15 looked.  We don't see it.

16         MR. FEUERSTEIN:  Okay.  Just --

17         THE COURT:   Now, that could be an easy answer to our

18 problem.

19         MR. FEUERSTEIN:  Well, it could be.  I'm going to

20 defer it to my co-counsel, Mr. Zinman, who took care of this.

21         MR. ZINMAN:  Your Honor, for the record, Daniel

22 Zinman.  Yeah.  I'm seeing that.  I'm sure it was an oversight

23 because I know that the packages went out and there was, in

24 fact, only one -- I believe one creditor that was entitled to

25 vote who did not actually vote but was served the voting

1    version of the package.  And then the other parties were served

2    with the other -- just the materials without the ballot.  But I

3    am looking on the docket that we may have neglected to file the

4    affidavit of service on that.  I am just checking.

5          Yes.  So I don't see it on the docket either.

6          THE COURT:  Okay.  So that's a nice, neat way of,

7    like, saying we should wait.

8          MR. FEUERSTEIN:  Well, I mean, Your Honor, but if it

9    was served and provided you -- and we actually -- this is

10   Jerold Feuerstein --  and we provide you with the affidavit of

11   service, that would seem to be --

12         THE COURT:  But why provide me with an affidavit of

13   service that I don't have for service of a plan that may not

14   end up being the plan?  What, we should go through all of that

15   today?

16         MR. FEUERSTEIN:  Okay.  I mean --

17         THE COURT:  Okay.  I mean I'm -- the other thing I

18   just want to double-check about here -- all right.  The other

19   thing I'm not clear about is this is only a confirmation of

20   this case, correct?

21         MR. FEUERSTEIN:  I'm sorry, Your Honor.  Someone was

22   typing, so I couldn't hear.

23         THE COURT:  There's a lot of noise.  This is only

24   confirmation of this case, correct?

25         MR. FEUERSTEIN:  Correct.  That's right.

1        THE COURT:  That's on 3052 Brighton First by virtue of

2   this tenant situation needs an amended plan.

3        MR. FEUERSTEIN:  Your Honor, this is Jerold

4   Feuerstein.  Yes.  The objective there is to amend that plan.

5   We're waiting to see what happens with respect to the

6   settlement agreement because that would be part of that plan as

7   well.  Assuming the settlement agreement is entered into, it

8   will be part of the plan along -- and the disclosure

9   statement -- along with the issues related to the overcharge.

10  So this is only for North 8th, Your Honor,

11       THE COURT:  All right.  Okay.  What I'm willing to do

12  is -- what I'm willing to do today is to raise a couple of

13  concerns about that, just so we can -- so we don't have to --

14  we don't have to hear them for the first time next time -- or

15  questions, actually.  So that was one.  Who were the three, who

16  were the three that you did serve, or the two representing

17  three parties?  Who were those folks?

18       MR. ZINMAN:  Daniel Zinman, Your Honor.  If you'll

19  bear with me a moment, I have that information.  It would have

20  been -- it would have been served on the debtor, and debtor's

21  counsel, and --

22       THE COURT:  No, no, no.

23       MR. ZINMAN:  -- anyone else who is from  --

24       THE COURT:  Right, there were three names that I just

25  had my law clerk state.

1        MR. ZINMAN:  Oh.

2        THE COURT:  Who are the -- who are they?

3        MR. ZINMAN:  Your Honor, I believe those are people

4   that have either filed a notice of appearance, or were listed

5   on the debtor's schedules, or filed a proof of claim.

6        THE COURT:  All right.  We have here, though, a

7   provision for rejecting the nonresidential executory contractor

8   leases.  What do you have here in the way of commercial

9   tenants?  Please remind me.  Because you have -- and I don't

10  know if -- I don't know if the other party to that has notice.

11  You say an executory contract -- hold on a second.  Let me find

12  it.

13        "Treatment of executory contracts bar date for

14  rejection claims arise that all unexpired leases to which the

15  debtor is a party as of the effective date other than

16  residential leases which were not previously rejected, assumed,

17  or assumed and assigned by the debtor shall be rejected and

18  disaffirmed under the plan as of the effective date in

19  accordance with the provisions and requirements of Section 365

20  and 1123, unless an executory contract or lease is listed as

21  assumed and assigned to a successful bidder on a notice to be

22  filed with the bankruptcy court, with such notice being served

23  by the proponents on the counterparty to each such executory

24  contract or unexpired lease no later than 21 days prior to the

25  effective date."

1         But that would be the notice of the claim, but I would
2   like the counterparties to be served.  Who else do we have
3   here?  What are the nonresidential leases?  And we know it's in
4   commercial and apartment buildings, so there is more than one
5   commercial tenant, right?

6         MR. ZINMAN:  To be honest, Your -- this is Daniel
7   Zinman.  To be honest, I'm not certain.  It is described as
8   such, but I don't know whether there is currently a tenant or
9   not.  Perhaps the receiver, who's on the phone, can address
10  that.

11        THE COURT:  Okay.  Mr. LaSpina?  Mr. LaSpina?

12        MR. LASPINA:  Your Honor, there are two buildings that
13  are a part of 203-205 North 8th Street.  It's mixed use and
14  there is a commercial tenant still in the building.

15        THE COURT:  All right.  Do you know the name of the
16  commercial tenant?

17        MR. LASPINA:  I don't, Your Honor.  I'm sure I have
18  records that I don't have with me and would take me a while to
19  access on that.  I think my operating statement has a list.
20  Let me see.  Fusion Group (ph.).  Yeah, I'm looking at --

21        THE COURT:  So I think whoever -- if you're looking to
22  reject that lease, or you're not sure, I think that that party
23  should be served, since you're doing it in the plan.

24        MR. LASPINA:  Your Honor, what we can do is, it's not
25  really -- it doesn't need to be assumed or rejected until the

1    sale is approved.  So what we can do is carve that out of the

2    confirmation order and indicate that there'll be a separate

3    notice in connection with that lease that will be filed -- a

4    separate motion that will be filed prior to it being assumed or

5    rejected.  That process would not otherwise slow down the

6    process in this case.

7              THE COURT:  So in the plan, you're not going to either

8    assume or reject it; you're going to say that you're going to

9    file a motion later on in connection with the sale?

10             MR. LASPINA:  Well, in the confirmation order, we can

11   provide that, Your Honor.

12             THE COURT:  Right.  You can't --

13             MR. LASPINA:  And the confirmation order seems to --

14             THE COURT:  Wait, so wait, but the question is, can

15   you do that?  Once you've confirmed a plan, and there's an

16   order of confirmation, right, can you thereafter query?  I

17   don't know the answer to this.  Can you --

18             MR. LASPINA:  But Your Honor --

19             MR. FEUERSTEIN:  So we have look at the issue -- this

20   is Jerold Feuerstein -- but I think you could do that prior

21   to -- I think you can make that decision prior to the effective

22   date, and this plan is not going effective for quite some time.

23             THE COURT:  Well, but that's different.  I mean, I

24   thought that you had to assume or reject -- I thought that the

25   plan was the last time that you could do that.  I mean, I'll be

1    the first one to say if that's wrong.  I mean, I'll admit it if

2    somebody tells me it's wrong.  But I thought that you had --

3    basically, that's why people do that in the plan; they have to

4    say one way or the other in the plan.  I understand it doesn't

5    go effective till the effective date, but if the plan has the

6    effect of a rejection or an assumption, it seems to me that the

7    party to that should have notice.  So I'm pointing that out.

8    I'm pointing it out; I'm not --

9            MR. ZINMAN:  Your Honor?

10            THE COURT:  I'm pointing it out.

11            MR. ZINMAN:  Yeah.  Your Honor?  Your Honor, it's, for

12    the record, Daniel Zinman.  I have done other plans in which

13    there was a sale process after confirmation in which -- in

14    other situations, it's held out to essentially the potential

15    purchaser would decide we're not doing it here, but that has

16    been done in other cases in which the potential purchaser

17    decides at least to give an option to the potential purchaser

18    to assume a lease, so that way, buyers could have that impact.

19    That's usually in a more -- with a lot of commercial (audio

20    interference) where some may be more valuable leases than

21    others.

22            In here, all we're doing -- all we'd be doing is

23    basically providing that notice under the applicable rule and

24    the time frame required under the bankruptcy rules and the

25    local rules at some point in the future.  I think it's fine as

1  long as it's explicit in the confirmation order that that issue

2  is being kind of pointed to a separate order to come.

3  THE COURT:  You could go with that.  Okay.  I don't

4  know that off the top of my head.  The other thing, or some

5  other source, too, I don't quite understand, and I don't

6  know -- Mr. Weiner, I don't think, has weighed in on this.

7  Maybe it's because he didn't -- he would have had to if we're

8  going ahead.

9  "Preservation of rights of action" -- interesting --

10  provides that, Article 6.5:  "On the effective date, all causes

11  of action shall be controlled by the proponents on behalf of

12  the debtor's estate" -- that's (a), "On the effective date,

13  all" -- (a) -- "all causes of action shall be controlled by the

14  proponents on behalf of the debtor's estate.

15  "(B) All privileges, including attorney-client and

16  attorney work product, and all rights under any confidentiality

17  agreement owned by the debtor on the effective date shall

18  transfer to the proponent, and the proponent shall have the

19  right to enforce or waive such privileges and rights, as they

20  see fit in their discretion."

21  Now, I used to be a Chapter 7 trustee in a prior life,

22  and I know something about when a trustee has that right in a

23  Chapter 7 to waive the privilege, but this one is new on me in

24  a plan provision.  We'll address that the next time.  And then

25  I also was a little -- "surrender of instruments" I was a

1  little bit unclear about, but the other two were clearly a bit

2  of a head-scratcher for me.

3          Do you see that, Mr. Weiner?

4          MR. WEINER:  Yes, Your Honor.

5          THE COURT:  You have any problem with it?

6          MR. WEINER:  Again, what I'm really focused on,

7  getting this deal done, which it looks like it's going to

8  happen, and the deal --

9          THE COURT:  All right.  Well, the thing that --

10          MR. WEINER:  So if the deal isn't done, then there's a

11  lot of other things that are happening here that are not

12  favorable to the debtor, so.

13          THE COURT:  Well, it's not a question of not being

14  favorable to the debtor.  Lots of times --

15          MR. WEINER:  Yeah.

16          THE COURT:  -- lots of times, things -- a competing

17  plan by a creditor is not favorable to the debtor.

18          MR. WEINER:  Right.

19          THE COURT:  I'm just not clear why we would need the

20  waiver of the attorney-client privilege and work product, and

21  I'm not sure of where I have the power to be doing that because

22  I don't know why they have the power to get it.  So that's a

23  question.

24          MR. ZINMAN:  Your Honor, it's Daniel Zinman, for the

25  record.  This is boilerplate that I've seen and used in many

1  plans.  Usually, when there is a known cause of action, or

2  causes of action, and there are -- I'm not aware of any here,

3  but if there are -- if there were in the case, say, large

4  preferences of fraudulent transfers and the like, the transfer

5  of the privilege is important because otherwise, the proponent

6  could not bring the action on behalf of the estate effectively

7  unless they had access to the debtor's confidential material.

8          That's basically how that runs.  In this case, we all

9  know from the Orange County decision from --

10          THE COURT:  Wait a minute.  Wait a minute.  Wait a

11  minute.  You would need -- you would need possession of --

12  preferences, you need possession of the books and records.  For

13  fraudulent conveyances, too, you would need possession of

14  ledgers, books, and records.  I'm trying to understand why you

15  get to waive the privilege and the work product.

16          MR. ZINMAN:  Your Honor, if I may?  To use as an

17  example, in the Adelphia Communications case, there were causes

18  of action against approximately 435 banks which were

19  transferred to a liquidating trust on the confirmation of that

20  plan.  Those causes of action were for around ten billion

21  dollars, and without the transfer of the privileges, we

22  couldn't proceed in bringing those and litigating those causes

23  of action, and it's a simple --

24          THE COURT:  Well, this is not Adelphia -- this is

25  not --

1          MR. ZINMAN:  And I understand that.  So if --

2          THE COURT:  -- Adelphia, and I don't want to be in a

3  situation where because it's boilerplate in the Adelphia case,

4  it finds its way into an order of confirmation, if it's more a

5  little single-asset real estate case in Brooklyn, so that all

6  of a sudden it's boilerplate for the next Chapter 11 case, and

7  the sleepy old (audio interference).

8          MR. ZINMAN:  Your Honor?  Your Honor, if I may?  You

9  are correct that we would basically only need books and records

10 if we were bringing only a preference or a constructive

11 fraudulent transfer.  If there were to be an intentional

12 fraudulent transfer, then materials from the debtor could be

13 very critical in establishing intent, in particular as it's the

14 debtors -- it's the transferor's intent that matters for an

15 intentional fraudulent transfer.  I'm using that, by the way of

16 example.

17         THE COURT:  I understand, but I'm not (audio

18 interference) --

19         MR. ZINMAN:  In this case, I'm not aware of any such

20 action.

21         THE COURT:  -- that you legally have -- I mean, again.

22 I know the Weintraub case.  As a 7 trustee, I did this, less to

23 the shock of the principal in a case called Hamilton

24 Reproductions (ph.) in 6 EDC (ph.) New York, and people got

25 into good (audio interference) by the office.  And I've yet to

1  see it in any case that I have confirmed and I -- okay.

2          And then again, you quote Adelphia because we have the

3  issue which, again, lists -- in this case, I might use my

4  discretion to confirm the plan, but you do have the issue of

5  having no vote.  You have no votes from an impaired class.

6  You're taking the no-vote as a vote of a class.  So I

7  understand what you're doing.  I know that the case law is

8  split, and I know the cases that you've cited for the

9  proposition.

10         MR. FEUERSTEIN:  Your Honor, the secured creditor is

11  an impaired creditor.

12         THE COURT:  No.  But you didn't vote.  You didn't vote

13  because you're deemed to accept it.

14         MR. ZINMAN:  Well, Your Honor, we didn't fill out a

15  ballot simply -- and we put the plan that way -- it's Daniel

16  Zinman.  Sorry.  It's simply the plan to save the

17  administrative task of sending ourselves the ballot and filling

18  it out.  Since we're the proponent, you know we vote in favor.

19  That doesn't make us unimpaired, the plan and the disclosure

20  statement is very clear that the secured creditors are

21  impaired.

22         The no-vote comes from class 6, the unsecured

23  creditors.  None of them voted.  So then we cited the Tenth

24  Circuit case for the idea that a no-vote should be deemed to be

25  accepted.

1          THE COURT:  No.  I know, that's --

2          MR. ZINMAN:  So in the absence of that we can cram

3    down -- we could cram down the unsupported creditor class.

4          THE COURT:  Yes, you can.  You can create an example

5    with that one.  Yes, you can.  Okay.

6          So with all that being said, I think that maybe it

7    makes a lot more sense to come back in a week or so, or

8    whenever you're able (audio interference).

9          Mr. Weiner, what's the story with the principal's

10   money here, if it is the principal?

11         MR. WEINER:  It still hasn't hit my account.

12         MR. FEUERSTEIN:  But you said you had fed reference

13   number, correct?

14         MR. WEINER:  My client emailed me a fed reference

15   number which I passed on to Mr. Feuerstein, but I'm refreshing

16   my account as we speak, and it still hasn't hit my account.

17         THE COURT:  Well, I don't know.  Let me just ask Mr.

18   Khodorovsky if he had anything to say, just in advance of the

19   adjourn date or confirmation.

20         MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

21   the U.S. Trustee.  I do want to briefly note that there's a

22   strange situation in the 203-205 case, in that the debtor has

23   filed its February and January operating reports but never

24   filed December.  Thank you, Your Honor.

25         THE COURT:  Okay.

1          MR. ZINMAN:  Your Honor, Daniel Zinman.  If I may

2    request, Ms. Carmel from my client --

3          MR. FEUERSTEIN:  I just told her to drop off the line,

4    Your Honor.

5          MR. ZINMAN:  Oh.

6          MR. FEUERSTEIN:  Sorry.  I didn't tell you that.

7          MR. ZINMAN:  Too late.  I was going to try and get her

8    testimony in while when was here, but I guess it's too late.

9    We'll deal with it on the adjourn date.

10          THE COURT:  So when you say "testimony", I have not

11    been confirming on testimony because I have to do that via

12    Zoom.  I've been confirming on a proffer, assuming there's no

13    objection.

14          MR. ZINMAN:  Yes, you --

15          MR. FEUERSTEIN:  Your Honor, it's Jerold Feuerstein.

16    In case you wanted -- in case there was any need for cross-

17    examination, the proffer is her declaration.  That's why we had

18    on the phone, just in case.

19          THE COURT:  Okay.  Okay.  And then, let me just see.

20    So you're going to get me an affidavit of service.  I mean,

21    this is actually quite simple.  You're selling the property in

22    the plan, though a plan.  This is not challenging, right?  Am I

23    missing something here?

24          MR. FEUERSTEIN:  All right.  I don't think it is, Your

25    Honor.

1        MR. ZINMAN:  Yes, that's correct, Your Honor.

2        THE COURT:  Okay.  What I did see is, were you -- is

3   there a fixed amount for your -- I don't remember this, and we

4   may have talked about it.  What's the current situation?

5        MR. ZINMAN:  Your Honor, Daniel Zinman.  Yes, that is

6   currently the one like, other than the date, in the proposed

7   bidding procedures.  The credit bid amount would be the full

8   amount of our claim through the date of the auction, which

9   presumably would be a few months now.  I have done some

10  calculations, and if you assume, say, April 30th, as an auction

11  date, which is probably a little aggressive, but it was a nice,

12  round number to use, the claim amount with post-petition

13  interest at the default rate would be $24,554,852.01.  We would

14  need to add to that legal fees, and that would be the amount of

15  the credit bid.  The first overbid would be 100,000 dollars

16  above that amount.

17        THE COURT:  Okay.  All right, we're going to take an

18  adjournment.  You're going to get me an affidavit of service.

19  We're going to look at the question of the assumption and

20  rejection before fulfillment.  And again, it would be -- we did

21  check out -- we do have the name of the commercial -- we think

22  we have the name of the current commercial tenant.

23        MR. FEUERSTEIN:  Well, I mean -- it's Mr.

24  Feuerstein -- if Mr. LaSpina can get us that lease that we can

25  confirm, that would be helpful.

1          THE COURT:  Well, and could it be Gather --

2          MR. LASPINA:  I actually --

3          THE COURT:   -- Gather Nail & Spa?  Is that it?

4   Gather Nail & Spa?

5          MR. LASPINA:  -- Nail & Spa, they're in a ten-year

6   lease that predated us, and they're current on their rent, and

7   they're intact.

8          THE COURT:  G-A-T-H-E-R Nail & Spa.

9          MR. LASPINA:  We have the rent roll with -- Your

10  Honor, Gregory LaSpina -- G.N. Spa (ph.) Incorporated; I guess

11  that's the entity that it operates.

12         THE COURT:  Oh, okay.  Either "Gather" or "GN"; it's

13  not clear to me.  Maybe it's that G-A-T-H-E-R, and I just don't

14  know.  Nail & Spa, so Nail & Spa.  Is that the only commercial

15  tenant?

16         MR. LASPINA:  For 203-205.

17         THE COURT:  The whole property?

18         MR. LASPINA:  Yes.

19         THE COURT:  Okay.  All right.  Anybody else want to

20  add anything on this?

21         MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky, for

22  the U.S. Trustee.  I just wanted to inquire if Your Honor --

23  before adjourning the matter, if Your Honor would also be

24  hearing Mr. LaSpina's fee application, his amended fee

25  application.  Thank you, Your Honor.

1    THE COURT:  Yeah.  I'm prepared to do that, yeah.  I'm

2 not going anywhere.  I also have to deal with the other case.

3 So if we want to talk, let's talk about the other case for a

4 minute, 3052 Brighton First.  Status?

5    MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky, for

6 the U.S. Trustee.  The 3052 debtor is current with the U.S.

7 Trustee fees and is current with operating reports.  Thank you,

8 Your Honor.

9    THE COURT:  Okay.  Anybody want to be heard on this.

10    MR. FEUERSTEIN:  Your Honor, Jerold Feuerstein.  As I

11 indicated before in connection with the North 8th case, we are

12 waiting for the settlement agreement, which would be

13 incorporated into an amended plan, which would also incorporate

14 the issues with respect to the tenant issues as represented by

15 Mr. Pick.  When we know that, we will either file an amendment

16 with respect to the settlement issue, or we'll just file an

17 amendment and amend them into the disclosure statement with

18 respect to overcharge.

19    THE COURT:  Okay.  All right.  Now, let's go -- Mr.

20 Pick, before I turn to the receiver's fee app, anything?

21    MR. PICK:  Yes.  I'm here, Judge.

22    THE COURT:  Did you want to add anything?

23    MR. PICK:  Oh, no.  I'm sorry, Judge.  Nothing to add;

24 I apologize.

25    THE COURT:  Okay.  All right.  We've got the second

1  amended motion for each of the properties, correct, for Mr.

2  LaSpina, correct?

3          MR. LASPINA:  Yes, Your Honor.  It's Gregory LaSpina.

4          MR. PICK:  And Judge, Doug Pick.  I apologize.  We

5  have uploaded the two orders that haven't been signed yet with

6  respect to the stay release, and with respect to the claims.

7          THE COURT:  Okay.  So here's my first problem.  And I

8  really don't mean to be difficult.  People who come before me a

9  lot, they tell me I'm not difficult.  I may be difficult this

10  time.  You were supposed to timely serve these, and if you

11  couldn't get them served in time, you were supposed to give me

12  an order shortening the time, and you didn't do that.

13          So right now, I have amended applications that were

14  untimely served.  The March 4th hearing, I so ordered that time

15  for service, normally 21 plus 3, would be shortened provided

16  that they be filed and served by March 8th.  So I did that;

17  however, both applications were filed and served two days later

18  on March 10th.

19          MR. LASPINA:  Yes, Your Honor.  Thank you.  Gregory

20  LaSpina.  Your Honor, in our last conversation, you indicated

21  that Court would take care of the shortened order.  You

22  actually sort of indicated that almost --

23          THE COURT:  Right.

24          MR. LASPINA:  -- as a favor.

25          THE COURT:  Right.

1      MR. LASPINA:  So, that's why I didn't generate for the

2  shortened --

3      THE COURT:  Right, but they you didn't get filed, but

4  I said the 8th, transcript at 39:18-25, and they didn't get

5  filed till the 10th, and so --

6      MR. LASPINA:  Yeah, actually I never saw an order,

7  Your Honor, providing that March 10th, date.  Obviously I knew

8  it was to be expedited --

9      THE COURT:  No, March 8th.  No, what I said on the

10  record that I would shorten the time, provided that they were

11  filed and served by March 8th.  I have a transcript reference.

12  But they, in fact, were filed and served two days later on

13  March 10th.  That's what I'm trying to say.  I didn't do an

14  order.  I so directed, but you didn't do it by the 8th.  So

15  then that's fine.

16      We've got to -- but assuming I'm willing to overlook

17  that, there were still issues I have with the second amended

18  application.  In both, again, you're seeking in the same

19  amount, and using, in my view, an incorrect messaging

20  calculating the amount of the insurance commission under CPLR

21  8004.  Got all the cases, but again, you're seeking an award

22  for North 8th, of 66,199.20, representing 5 percent of

23  1,323,984.03, calculated based on the aggregate of the total

24  receipts of 732,740.16, and the total disbursement of

25  591,243.87.

1       At 3052 Brighton First, again, you're seeking an award

2  of 163,953.04, representing five percent of $3,279,060.70,

3  calculated based on the aggregate of the total receipts of

4  1,824,397.70, and total disbursement of 1,454,663, -- using the

5  aggregate amount of receipts and disbursements resulted in a

6  substantially higher amount than you would otherwise be

7  entitled to under CPLR 8004.

8       MR. LASPINA:  And let's just -- all right, Your Honor.

9  If I may?  Gregory LaSpina.

10       THE COURT:  Yeah.  Mr. LaSpina, I told you about the

11  cases, and you told me about COVID.  But I don't think -- I

12  don't think the case that you cited is -- I think is totally

13  distinguishable for a whole host of reasons.  And everybody is

14  dealing with COVID, so there's nothing unique about COVID, so.

15       MR. LASPINA:  Your Honor, Gregory LaSpina.  I think

16  when I was last before the Court on this issue, the Court asked

17  me to set forth what made the receivership different in COVID.

18  Yes, everyone is dealing with COVID, but I went on for two or

19  three pages about what services or enhanced services were

20  provided to the receivership as a result of CDC guidelines, and

21  as a result of vendors having to be safe, and as a result of

22  more service having to be provided:  people at home, more

23  waste, more garbage.

24       I think there are special circumstances here.  I did

25  find a case from Westchester where the court did, in fact,

1  weigh and credited the nature and value of services beyond the

2  statutory amount.  I think there's ample facts here to warrant

3  special circumstances and unique and extraordinary services.

4  Moreover, the time during a pandemic that I've committed to the

5  legal part of this case, for which I am not receiving

6  compensation or haven't sought it, but that has a value.

7          All of these things in totality have enhanced the

8  bankruptcy estate.  We're talking about a significant amount of

9  money that may be a return to equity for someone that reposes

10  in their depository accounts, significant amounts of rent.  You

11  had asked--  you had asked whether or not there were any cases.

12  Yes, you found --

13          THE COURT:  Right.

14          MR. LASPINA:  -- a case that is being distinguished,

15  but frankly, all of those cases there's either -- there was

16  either something going on that there's a fight between --

17  amongst the parties on the receiver's fees.  We have a

18  situation here, where neither the secured, nor the debtor, are

19  objecting to the fees being sought.  And I know that's not

20  binding on the Court, but to me, that's compelling.

21          THE COURT:  Hang on a minute.  So in AJ Partners, that

22  was a very, very -- I mean, a huge percentage, but that was a

23  very small amount of money.

24          MR. LASPINA:  Correct.  Yes, Your Honor.  I agree.

25          THE COURT:  The court awarded $5,100 when the statute

1    called for $893.47.  It wasn't -- we're not talking about tens

2    and tens and tens of thousands of dollars, as we are here.  So

3    that's one thing.  But did you -- there's a property manager

4    for these properties, is there not, separate and apart, and

5    compensated separate and apart from you as the receiver?

6            MR. LASPINA:  Yes, Your Honor, pursuant to a

7    management agreement, and there's no duplicate services between

8    what I do and what they do.

9            THE COURT:  But that was -- I guess, again, when

10   you're telling me about COVID, if there's a property manager

11   appointed for both properties, and the property manager is

12   being compensated for services as a property manager, and

13   you're -- hang on a minute -- and you are calculating your --

14   part of your statutory commission includes the payments to the

15   property manager, correct?

16           MR. LASPINA:  Yes.  There's a management agreement,

17   and we work as a team, but virtually, they don't do anything

18   unless they consult with me.  I'm in involved in every --

19   whether it be someone who is coming in to fix a --

20           THE COURT:  But wait.  But wait a minute.  December

21   2020 operating statements reflect that management fees the

22   total amounts for 2020 as follows:  43,155.76 in 203-205 North

23   and 88,158.17 in 3052 Brighton.  The other distinction is that,

24   again, the AJ Partners' properties were inner-city properties

25   and again, the Court made a finding that there was a public-

1    policy issue at stake as well.

2            The preservation of aging possibly on housing stocks

3    serving a significant part of the population of Westchester

4    County who otherwise may require public-subsidized housing or

5    risk homelessness.  It would be a stretch here to say that

6    public-policy issues were at stake.

7            MR. LASPINA:  Your Honor, I mean, I understood the

8    Court's decision there in that case.  The principle that I

9    extracted is a principle that could easily apply here.  I mean,

10   I don't know if we evaluate buildings on what's more inner city

11   than another.  We have a property that has forty residential

12   units and ten commercial units in Brighton First, in Brighton

13   First in Brooklyn, and North 8th is Williamsburg, and there's

14   seventeen units in those buildings.

15           So I mean, is not a Hamptons' property that we're

16   managing.  They're very demanding properties in their own

17   right.

18           THE COURT:  But again, where you've got management

19   companies in place, you are seeking two times over the

20   statutory entitlement, and barring that --

21           MR. LASPINA:  Your Honor, when I was first appointed

22   and I made my motion pursuant to Part 36 in this court for

23   secondary appointments -- when I made that application to the

24   court, I asked for a property manager, and I asked that instead

25   of having the property manager wait for fees at the end of the

1  receivership, which no manager -- very managers will do that

2  because the cash flow, the commitment of time, and resources.

3          So going into the state court, and asking for the

4  appointment, I had a management agreement, and the secured

5  lender didn't balk at the management agreement.  That's the

6  nature of the beast.  I have other buildings where there are

7  management agreements.  And again, it's not duplicate services.

8  I scrutinize--

9          THE COURT:  Why would the secured creditor balk?  I

10  don't why the secured creditor would balk.  The secured

11  creditor is going to -- the secured creditor is not coming out

12  of the secured creditor's side right now.

13          MR. LASPINA:  I know.  But I wouldn't expect anyone to

14  think that the building would have a manager without

15  compensation to the managers for what they do.

16          THE COURT:  Okay.  There are many -- you cited one

17  case to me which was clearly distinguishable, didn't have a

18  management agreement, and I have numerous cases that say

19  otherwise.

20          MR. LASPINA:  And Your Honor, not to be difficult, and

21  I thank you for your time.  None of those cases occurred during

22  a pandemic.

23          THE COURT:  I will take it under advisement.  I'll

24  take them under advisement, and I'll determine if there's

25  anything that I think you should be getting over and above.  If

1  you know of -- if you have any -- I'll let you supplement

2  this -- if you know of any other situations in state court,

3  where the state court is granting commissions to receivers with

4  some kind of a pandemic addition, you can let me know.

5          But lots and lots and lots of cases; you've given me

6  one that's totally distinguishable, and I've got many, many,

7  that say the opposite.

8          MR. LASPINA:  Gregory LaSpina.  Yes, thank you, Your

9  Honor.  In the state court this issue hasn't really come up

10  because the state courts have put a lot of the foreclosure

11  activity on a stay or moratorium calendar, where they haven't

12  been committing --

13          THE COURT:  No.  But what about the -- but there were

14  existing receiverships in the state court, and don't those

15  receive --

16          MR. LASPINA:  I have existing receiverships in the

17  state court.  I have property --

18          THE COURT:  And don't you go in periodically to get

19  paid?

20          MR. LASPINA:  I have property managers -- Your Honor,

21  I would say ninety percent of the time, I have compensated with

22  five percent monies in and five percent monies out.  That's why

23  I say, some of the cases that -- I know the case law is setting

24  aside the pandemic nature of things.  The case law that you

25  have graciously directed me to, and I independently researched,

1  they're usually situations where it's unique onto itself,

2  whether it be someone managing a strip mall situation in an

3  inner-city property, or a fight between a receiver who's also a

4  principal in the management company and is collecting with both

5  hands in that instance.

6          Those cases are all nuanced.  Even by stipulation, I

7  have received five percent in and five percent out in the

8  bankruptcy court.  Not before Your Honor.  This is the first

9  time that I've had a case before Your Honor, but again, I think

10 the fact that -- the secured lenders, they fight with the

11 receivers all the time.  They're not a doormat for the

12 receiver.  If they think there's --

13         THE COURT:  Again, if Mr. Feuerstein's client wants to

14 pay you, and it's not charged to the estate, it sounds like

15 a --  sounds like a good plan to me.  But that's not what's

16 happening here.  They're going to get their -- they're going to

17 get their -- again, their claim and whatever, of interest or

18 whatever they settle on, and this is above and beyond that.

19 And again, I've had even more cases than I had last time.

20         So if you can find me a situation where anyone has

21 given a benefit -- now, the management companies here are

22 unrelated to you or related to you?

23         MR. LASPINA:  Unrelated to me.  I have to go into the

24 state court and make an application, and they have to be on a

25 Part 36 list, an approved list, and I don't --

1            THE COURT:  Okay.  So they're unrelated, right?

2            MR. LASPINA:  Unrelated.  Unrelated to me.

3            THE COURT:  Okay.  And isn't it the management company

4    that would have the additional, to the extent that there is

5    work?  And I'll recognize that there may be additional -- it

6    depends upon the building; it depends upon whether everybody

7    fled the building to go elsewhere or everyone's in the

8    building.  But yes, there could be more work for -- there could

9    be work for building staff.  But what I'm trying to understand

10   is, why is that not falling on the management company, and why

11   is that falling on you as the receiver?

12           MR. LASPINA:  Gregory LaSpina.  Thank you, Your Honor.

13   This, of course, is a collaboration when, I think earlier on,

14   one of your earlier cases, you talked about all kinds of

15   forbearance agreements.  That's happening in all buildings.  So

16   managing agent, although they're my agent for purposes of

17   building service and all, when they get a request from a tenant

18   for a forbearance, or I can pay -- things are tough, I could

19   pay half the rent now; can you take the other half in two or

20   three weeks?  They don't make those decisions without my

21   consent to those.  So when I say that all --

22           THE COURT:  Okay.  Just so we're clear.  Okay, so the

23   kind of additional work you're talking about, has to do with

24   how rents are paid, or not paid, and what the collection

25   situation is, and keeping up with law on moratorium presumably,

1   and dealing with the question of communicating for forbearance

2   request.  But as far as the work, additional garbage being --

3   all of that, that falls on the management committee, not on --

4   a management company, not on you.

5           MR. LASPINA:  But Your Honor, I'll give you an

6   example.  When they have to -- when they have to purchase PPP

7   equipment, when they have to -- their resources have to be

8   stretched in different directions, and they're asking for a

9   priority of needs, again, they will contact me and say what

10  needs to be paid first?

11          These are things -- these are boots -- this is boots

12  on the ground.  I'm not the air traffic controller.  I am not

13  going to the building and applying disinfectant to the walls

14  myself.  That is some -- but the managers have to retain

15  vendors to do that.  They have to make sure that their tenants

16  are safe.  So there's no aspect of this.  I mean, it's like a

17  CEO of a corporation doesn't make sure that there's adequate

18  paper dispensers in the restrooms, but the responsibility.

19          And I wouldn't have it any other way.  I don't allow

20  my property managers to make decisions without consultation

21  because at the end of the day, and I hate to use that again,

22  it's my responsibility.  I have to discharge my duties.  And

23  the unique circumstances dictated by pandemic -- signage,

24  elevator use -- I was a party to all of those decisions.  So

25  there probably is no state court case that is awarded fees

1    where someone articulated the unique circumstances driven by

2    the COVID-19 crisis.

3              THE COURT:  Okay.  Well, if there's not, there's not.

4    But I'm looking at appellate division law, I'm looking at a lot

5    of law, and it's not old law, that says the way you've

6    calculated it is not the way that's acceptable, including

7    bankruptcy case.  Indeed, both federal, district, and

8    bankruptcy courts have adopted this interpretation of CPLR

9    8004, so as not to permit or receive an award or commissions of

10   the percentage calculated using the aggregate amount of the

11   amounts received plus the amounts disbursed.

12             And you've got a Southern District case, In re 1415

13   West 150th LLC, awarding final commission to continued receiver

14   commission equal to five percent of total income received.

15   You've got In re Studio # 54 Disco, Inc. in the Eastern

16   District.  That's an older case, 21 BR 308.  We've got a more

17   recent case which is not a -- I don't believe it's a bankruptcy

18   case, but it's in the Eastern District, Gasser v. Infanti

19   International, Inc., at 358 F.2d 176.  And then -- just a

20   minute -- and then you cited to me a case which we thought

21   stood for the opposite proposition, the New York Bank for

22   Savings v. Jamaica Towers West.

23             So I mean, I'll take it as submitted, but we've got an

24   uphill battle here.  Okay.  I'll mark it submitted.  Let's see

25   one more --

1        MR. LASPINA:  Yes.  Thank you, Your Honor.

2        THE COURT:  We'll see when we're -- we'll see when

3   we're coming back.  Do you want to short adjournment, to make

4   sure that the money is coming?  Or you want time to mend

5   things?  Or what do you want here?

6        MR. FEUERSTEIN:  Your Honor, this is Jerold

7   Feuerstein.  The money's never come in, I mean, we probably

8   want to move forward to confirmation.  I obviously want to

9   check this issue with assumption within -- with the lease, but

10  we'd like a relatively short date.  And hopefully, that based

11  upon the fact that Mr. Weiner has the fed reference number, the

12  money is coming in.  So we may not need it, but we'd like to

13  keep a very short string on this.

14       THE COURT:  Wait just a minute.  My computer closed

15  up, so give me a minute.  Okay.  All right, I'm back in

16  business here.

17       Okay.  Ms. Howard?

18       THE CLERK:  Yes, Judge.

19       THE COURT:  Are we keeping all of them together, Mr.

20  Feuerstein?

21       MR. FEUERSTEIN:  I think we should, at least for

22  control, I would imagine, Your Honor, because we can report

23  back to the Court with what happens with respect to the

24  settlement, and then we can go from there.  I mean, just at

25  least a status conference, I suppose, on Brighton; it can't

1    hurt.

2            THE COURT:  All right.  Let me see.  I'm looking.

3            Ms. Howard, can we fit it on at 11 o'clock on April

4    13th?  Or are we better off not doing that?

5            THE CLERK:  Hold one second.  Some post-confirmation

6    status hearings, and they might go fast.

7            THE COURT:  I'm just looking to see what we've already

8    set to that date from earlier.  Okay.

9            THE CLERK:  I mean, we could but it's going to be -- I

10   mean, it's going to take some time.

11           THE COURT:  Yeah.  We've got two things at 11:30.

12   Let's see, what time?  Well, we could put it on 11:30.

13           THE CLERK:  After the other matters?

14           THE COURT:  After the other matters.

15           THE CLERK:  Okay.

16           MR. KHODOROVSKY:  I apologize, Your Honor.  This is

17   Nazar Khodorovsky for the U.S. Trustee.  Which date is Your

18   Honor proposing to call --

19           THE COURT:  Don't apologize yet because we're still

20   negotiating.  April 13th.  Does that work for both, April 13th?

21           MR. FEUERSTEIN:  I have another matter before Your

22   Honor at that time, so it works for me.

23           THE COURT:  It works for --

24           MR. ZINMAN:  I've got several -- I've got several

25   matters on before Your Honor that date morning and afternoon.

1          THE COURT:  Okay.  I'll put this open; I'm booking at

2   11:30.

3          MR. ZINMAN:  11:30?

4          THE COURT:  You are in the afternoon?

5          MR. ZINMAN:  I have matters both in the morning and

6   the afternoon before you, Your Honor.

7          THE COURT:  Now, Mr. Feuerstein, when are you?

8          MR. FEUERSTEIN:  I'm on for you at 11:30 as well, Your

9   Honor.

10          THE COURT:  Oh.  Okay.

11          MR. ZINMAN:  Well, my list, I have matters on at 10:00

12   and at 10:30, so by 11:30, I can handle 11:30.

13          THE COURT:  All right then.  Basically, I'm glad, I

14   believe everybody is happy, everybody but us.  April 13.  It's

15   okay.  It's at 11:30, all matters.

16          MR. KHODOROVSKY:  I apologize, Your Honor.  Nazar

17   Khodorovsky for the U.S. again; I couldn't hear through the

18   noise.  I apologize for that.  Does Your Honor record it as

19   13th of April at 11:30 for both cases?  Thank you, Your Honor.

20   I apologize for that.

21          THE COURT:  Yes.  Both cases, all matters.

22          MR. KHODOROVSKY:  Thank you.

23          MR. ZINMAN:  Your Honor, it's Dan -- Your Honor, it's

24   Daniel Zinman.  While you were dealing with the receiver.  We

25   were able to locate the certificate of service that you were

1  looking for.  It's actually docket number 111, and as I recall,

2  I think what it was is we discovered a few entities had not

3  been served that should have been, and why there was a second

4  affidavit of service; that was the one Your Honor responded to.

5  I had forgotten that until I saw this.

6          THE COURT:  Okay.

7          MR. ZINMAN:  Yeah, but it indicates service on --

8          THE COURT:  I apologize, but we looked and we must

9  have missed it because of -- hold on let me just -- let me get

10  there.  We looked around.  Let me see.

11          MR. ZINMAN:  As did I, Your Honor.  And it was -- a

12  colleague of mine emailed it to me.

13          THE COURT:  Hold on.  Let me see.  Let me make sure

14  that I have it.  Hold on.

15          MR. ZINMAN:  For some reason, the -- I don't know what

16  to call it -- the banner across the top with the case number on

17  the end and what docket number it is did not appear when I

18  downloaded it from the website moments ago.

19          THE COURT:  I don't see it.  Okay.  All right.  So

20  okay.  All right.  So we'll know on the 13th which way we're

21  going.

22          MR. FEUERSTEIN:  Yes, Your Honor.

23          THE COURT:  Thanks.

24          MR. FEUERSTEIN:  Thank you.

25          MR. KHODOROVSKY:  Thank you, Your Honor.  Have a good

1  afternoon, Your Honor.

2          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

3          MR. KHODOROVSKY:  I assume it's -- again, thank you so

4  much.

5          THE COURT:  Thank you.

6          MR. KHODOROVSKY:  Thank you so much.

7      (Whereupon these proceedings were concluded)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Deloris Gauntlett, certify that the foregoing transcript is

5    a true and accurate record of the proceedings.

6

7

8

9    _____

10   Delores Gauntlett

11

12   eScribers

13   352 Seventh Ave., Suite #604

14   New York, NY 10001

15

16   Date:  April 5, 2021

17

18

19

20

21

22

23

24

25

**203-205 NORTH 8TH STREET LOFT, LLC**
**3052 BRIGHTON FIRST, LLC**

March 23, 2021

## #

**#604 (1)**
4:22

## $

**$24,554,852.01 (1)**
25:13
**$3,279,060.70 (1)**
30:2
**$5,100 (1)**
31:25
**$893.47 (1)**
32:1

## [

**[10] (1)**
3:8
**[113] (1)**
3:10
**[115] (1)**
3:16
**[128] (1)**
4:2
**[136] (1)**
4:7
**[95] (1)**
4:4

## A

**abeyance (1)**
9:20
**able (2)**
23:8;42:25
**above (3)**
25:16;34:25;36:18
**absence (1)**
23:2
**accept (1)**
22:13
**acceptable (1)**
39:6
**accepted (1)**
22:25
**access (2)**
15:19;20:7
**accordance (1)**
14:19
**account (3)**
23:11,16,16
**accounts (1)**
31:10
**across (1)**
43:16
**action (10)**
18:9,11,13;20:1,2,
6,18,20,23;21:20
**activity (1)**
35:11

**actually (8)**
11:25;12:9;13:15;
24:21;26:2;28:22;
29:6;43:1
**add (4)**
25:14;26:20;
27:22,23
**addition (1)**
35:4
**additional (4)**
37:4,5,23;38:2
**address (2)**
15:9;18:24
**Adelphia (5)**
20:17,24;21:2,3;
22:2
**adequate (1)**
38:17
**Adj (5)**
3:8,10,16;4:2,4
**adjourn (2)**
23:19;24:9
**adjourned (1)**
7:23
**adjourning (1)**
26:23
**adjournment (2)**
25:18;40:3
**administrative (1)**
22:17
**admit (1)**
17:1
**adopted (1)**
39:8
**advance (1)**
23:18
**advisement (2)**
34:23,24
**affidavit (10)**
10:20,20;11:11,
12;12:4,10,12;24:20;
25:18;43:4
**afternoon (7)**
7:7,15,17;41:25;
42:4,6;44:1
**again (23)**
11:2;9;19:6;21:21;
22:2,3;25:20;29:18,
21;30:1;32:9,24,25;
33:18;34:7;36:9,13,
17,19;38:9,21;42:17;
44:3
**against (1)**
20:18
**agent (2)**
37:16,16
**aggregate (4)**
29:23;30:3,5;
39:10
**aggressive (1)**
25:11
**aging (1)**
33:2

**ago (1)**
43:18
**agree (2)**
8:19;31:24
**agreement (14)**
8:5,11,21,23;9:23;
13:6,7;18:17;27:12;
32:7,16;34:4,5,18
**agreements (1)**
34:7;37:15
**ahead (3)**
9:2,4;18:8
**air (1)**
38:12
**AJ (2)**
31:21;32:24
**allow (1)**
38:19
**almost (1)**
28:22
**along (2)**
13:8,9
**although (1)**
37:16
**amend (3)**
9:23;13:4;27:17
**Amended (16)**
3:16;4:2,7;9:9,9,
16,22;10:7,12,15;
13:2;26:24;27:13;
28:1,13;29:17
**amending (1)**
9:24
**amendment (3)**
10:13;27:15,17
**amongst (1)**
31:17
**amount (14)**
25:3,7,8,12,14,16;
29:19,20;30:5,6;
31:2,8,23;39:10
**amounts (4)**
31:10;32:22;
39:11,11
**ample (1)**
31:2
**apart (2)**
32:4,5
**apartment (1)**
15:4
**apologize (10)**
9:6,10;27:24;28:4;
41:16,19;42:16,18,
20;43:8
**app (1)**
27:20
**appear (2)**
10:19;43:17
**appearance (1)**
14:4
**Appearances (1)**
7:4
**appellate (1)**

**39:4**
**applicable (1)**
17:23
**application (5)**
26:24,25;29:18;
33:23;36:24
**applications (2)**
28:13,17
**apply (1)**
33:9
**applying (1)**
38:13
**appointed (2)**
32:11;33:21
**appointment (1)**
34:4
**appointments (1)**
33:23
**appropriate (1)**
8:7
**approved (6)**
9:8;10:8,10,12;
16:1;36:25
**approves (1)**
10:15
**Approving (4)**
3:10,11,17,18
**approximately (1)**
20:18
**April (6)**
25:10;41:3,20,20;
42:14,19
**arise (1)**
14:14
**around (2)**
20:20;43:10
**Article (1)**
18:10
**articulated (1)**
39:1
**Ashlynn (1)**
11:4
**aside (1)**
35:24
**asked- (1)**
31:11
**aspect (1)**
38:16
**assigned (2)**
14:17,21
**assume (5)**
16:8;24:17;18:
25:10;44:3
**assumed (5)**
14:16,17,21;
15:25;16:4
**Assuming (3)**
13:7;24:12;29:16
**assumption (3)**
17:6;25:19;40:9
**attorney (1)**
18:16
**attorney-client (2)**

**18:15;19:20**
**Attorneys (1)**
6:3
**auction (2)**
25:8,10
**audio (5)**
17:19;21:7,17,25;
23:8
**Authorize/Direct (2)**
3:16,21
**Avenue (2)**
4:22;6:4
**award (2)**
29:21;30:1;39:9
**awarded (2)**
31:25;38:25
**awarding (1)**
39:13
**aware (2)**
20:2;21:19

## B

**back (4)**
23:7;40:3,15,23
**balk (3)**
34:5,9,10
**ballot (3)**
12:2;22:15,17
**Bank (1)**
39:21
**Bankruptcy (11)**
3:13,14,19,20;
14:22;17:24;31:8;
36:8;39:7,8,17
**banks (1)**
20:18
**banner (1)**
43:16
**bar (1)**
14:13
**barring (1)**
33:20
**based (4)**
9:22;29:23;30:3;
40:10
**basically (5)**
17:3,23;20:8;21:9;
42:13
**battle (1)**
39:24
**bear (1)**
13:19
**beast (1)**
34:6
**behalf (7)**
4:3,8;7:8,12;
18:11,14;20:6
**benefit (1)**
36:21
**better (1)**
41:4
**beyond (2)**

31:1;36:18
bid (2)
  25:7,15
bidder (1)
  14:21
bidding (1)
  25:7
billion (1)
  20:20
binding (1)
  31:20
bit (3)
  9:7;19:1,1
boilerplate (3)
  19:25;21:3,6
booking (1)
  42:1
books (3)
  20:12,14;21:9
boots (2)
  38:11,11
Borchert (1)
  7:16
both (9)
  28:17;29:18;
  32:11;36:4;39:7;
  41:20;42:5,19,21
BR (1)
  39:16
brief (1)
  7:22
briefly (1)
  23:21
Brighton (11)
  3:22,23;7:3,14;
  13:1;27:4;30:1;
  32:23;33:12,12;
  40:25
bring (2)
  8:1;20:6
bringing (2)
  20:22;21:10
Broker (2)
  3:11,18
Brooklyn (2)
  21:5;33:13
Bruce (1)
  7:5
building (8)
  15:14;34:14;37:6,
  7,8,9,17;38:13
buildings (6)
  15:4,12;33:10,14;
  34:6;37:15
business (1)
  40:16
buyers (1)
  17:18

**C**

calculated (4)
  29:23;30:3;39:6,

10
calculating (2)
  29:20;32:13
calculations (1)
  25:10
calendar (1)
  35:11
call (3)
  7:9;41:18;43:16
called (2)
  21:23;32:1
can (29)
  8:4,20,20,22;9:13,
  18;13:13;15:9,24;
  16:1,10,14,16,17,21;
  23:2,4,4,5;25:24,24;
  35:4;36:20;37:18,
  19;40:22,24;41:3;
  42:12
care (4)
  11:8,9,20;28:21
CARMEL (3)
  6:21;7:10;24:2
carve (1)
  16:1
case (42)
  7:2,10;12:20,24;
  16:6;20:3,8,17;21:3,
  5,6,19,22,23;22:1,3,
  7,24;23:22;24:16,16,
  18;27:2,3,11;30:12,
  25;31:5,14;33:8;
  34:17;35:23,24;
  36:9;38:25;39:7,12,
  16,17,18,20;43:16
cases (15)
  17:16;22:8;29:21;
  30:11;31:11,15;
  34:18,21;35:5,23;
  36:6,19;37:14;42:19,
  21
cash (1)
  34:2
cause (1)
  20:1
causes (6)
  18:10,13;20:2,17,
  20,22
CDC (1)
  30:20
CEO (1)
  38:17
certain (3)
  8:6,10;15:7
certificate (1)
  42:25
challenging (1)
  24:22
Chapter (3)
  18:21,23;21:6
charged (1)
  36:14
check (2)

25:21;40:9
checking (1)
  12:4
Circuit (1)
  22:24
circumstances (4)
  30:24;31:3;38:23;
  39:1
cited (5)
  22:8,23;30:12;
  34:16;39:20
city (1)
  33:10
claim (5)
  14:5;15:1;25:8,12;
  36:17
claims (3)
  11:14;14:14;28:6
clarify (1)
  9:10
class (4)
  22:5,6,22;23:3
clear (6)
  10:3;12:19;19:19;
  22:20;26:13;37:22
clearly (2)
  19:1;34:17
CLERK (8)
  7:4;11:6;13:25;
  40:18;41:5,9,13,15
client (3)
  23:14;24:2;36:13
closed (1)
  40:14
co-counsel (1)
  11:20
Code (2)
  3:13,20
collaboration (1)
  37:13
colleague (1)
  43:12
collecting (1)
  36:4
collection (1)
  37:24
coming (5)
  32:19;34:11;40:3,
  4,12
commercial (11)
  10:24;14:8;15:4,5,
  14,16;17:19;25:21,
  22;26:14;33:12
commission (4)
  29:20;32:14;
  39:13,14
commissions (2)
  35:3;39:9
commitment (1)
  34:2
committed (1)
  31:4
committee (1)

38:3
committing (1)
  35:12
communicating (1)
  38:1
Communications (1)
  20:17
companies (2)
  33:19;36:21
company (4)
  36:4;37:3,10;38:4
compelling (1)
  31:20
compensated (3)
  32:5,12;35:21
compensation (2)
  31:6;34:15
competing (1)
  19:16
computer (1)
  40:14
concerns (1)
  13:13
concluded (1)
  44:7
Conference (2)
  3:8;40:25
confidential (1)
  20:7
confidentiality (1)
  18:16
confirm (5)
  8:4,21,22;22:4;
  25:25
Confirmation (19)
  3:6;7:11,22;8:18,
  19;9:9;10:13;12:19,
  24;16:2,10,13,16;
  17:13;18:1;20:19;
  21:4;23:19;40:8
confirmed (3)
  8:13;16:15;22:1
confirming (3)
  9:24;24:11,12
confused (3)
  9:7;10:4,5
connection (4)
  8:11;16:3,9;27:11
consent (1)
  37:21
constructive (1)
  21:10
consult (1)
  32:18
consultation (1)
  38:20
contact (1)
  38:9
continued (1)
  39:13
contract (3)
  14:11,20,24
contractor (1)

14:7
contracts (1)
  14:13
control (1)
  40:22
controlled (2)
  18:11,13
controller (1)
  38:12
conversation (1)
  28:20
conveyances (1)
  20:13
Corporation (2)
  11:7;38:17
Costs/Atty (6)
  3:3;4:2,4,7,9,11
counsel (6)
  8:11,12;9:7;11:1,
  13;13:21
counterparties (1)
  15:2
counterparty (1)
  14:23
County (2)
  20:9;33:4
couple (1)
  13:12
course (1)
  37:13
COURT (127)
  7:2,16,18,20;8:9,
  18,24;9:2,13,21,25;
  10:3,17;11:11,17;
  12:6,12,17,23;13:1,
  11,22,24;14:2,6,22;
  15:11,15,21;16:7,12,
  14,23;17:10;18:3;
  19:5,9,13,16,20;
  20:10,24;21:2,17,21;
  22:12;23:1,4,17,25;
  24:10,19;25:2,17;
  26:1,3,8,12,17,19;
  27:1,9,19,22,25;
  28:7,21,23,25;29:3,
  9;30:10,16,16,25;
  31:13,20,21,25,25;
  32:9,20,25;33:18,22,
  24;34:3,9,16,23;
  35:2,3,9,13,14,17,18;
  36:8,13,24;37:1,3,
  22;38:25;39:3;40:2,
  14,19,23;41:2,7,11,
  14,19,23;42:1,4,7,10,
  13,21;43:6,8,13,19,
  23;44:5
courts (2)
  35:10;39:8
Court's (1)
  33:8
COVID (5)
  30:11,14,14,17,18;
  32:10

**203-205 NORTH 8TH STREET LOFT, LLC**
**3052 BRIGHTON FIRST, LLC**

March 23, 2021

**COVID-19 (1)**
39:2
**CPLR (3)**
29:20;30:7;39:8
**cram (2)**
23:2,3
**create (1)**
23:4
**credit (2)**
25:7,15
**credited (1)**
31:1
**Creditor (12)**
3:22,22;8:16;
11:24;19:17;22:10,
11;23:3;34:9,10,11,
11
**creditors (6)**
7:9;11:1,13,14;
22:20,23
**creditor's (1)**
34:12
**crisis (1)**
39:2
**critical (1)**
21:13
**Critically (1)**
10:25
**cross- (1)**
24:16
**current (5)**
25:4,22;26:6;27:6,
7
**currently (2)**
15:8;25:6

**D**

**Dan (2)**
7:9;42:23
**Daniel (9)**
11:21;13:18;15:6;
17:12;19:24;22:15;
24:1;25:5;42:24
**date (20)**
8:2;14:13,15,18,
25;16:22;17:5;
18:10,12,17;23:19;
24:9;25:6,8,11;29:7;
40:10;41:8,17,25
**day (1)**
38:21
**days (3)**
14:24;28:17;29:12
**deal (5)**
19:7,8,10;24:9;
27:2
**dealing (4)**
30:14,18;38:1;
42:24
**debtor (15)**
8:5,5;10:25;11:12;
13:20;14:15,17;

18:17;19:12,14,17;
21:12;23:22;27:6;
31:18
**Debtors (3)**
3:19;7:6;21:14
**debtors' (2)**
8:11,12
**Debtor's (8)**
3:12;11:1,13;
13:20;14:5;18:12,
14;20:7
**December (3)**
10:22;23:24;32:20
**decide (1)**
17:15
**decides (1)**
17:17
**decision (4)**
9:20;16:21;20:9;
33:8
**decisions (3)**
37:20;38:20,24
**declaration (1)**
24:17
**deemed (2)**
22:13,24
**default (1)**
25:13
**defer (1)**
11:20
**deficiency (1)**
10:19
**Delores (1)**
4:20
**demanding (1)**
33:16
**DEPARTMENT (1)**
6:11
**depends (2)**
37:6,6
**depository (1)**
31:10
**described (1)**
15:7
**determine (1)**
34:24
**dictated (1)**
38:23
**different (3)**
16:23;30:17;38:8
**difficult (1)**
28:8,9,9;34:20
**directed (2)**
29:14;35:25
**directions (1)**
38:8
**Director (1)**
6:21
**disaffirmed (1)**
14:18
**disbursed (1)**
39:11
**disbursement (2)**

29:24;30:4
**disbursements (1)**
30:5
**discharge (1)**
38:22
**disclose (1)**
8:7
**disclosure (4)**
8:22;13:8;22:19;
27:17
**Disco (1)**
39:15
**discovered (1)**
43:2
**discretion (2)**
18:20;22:4
**disinfectant (1)**
38:13
**dispensers (1)**
38:18
**distinction (1)**
32:23
**distinguishable (3)**
30:13;34:17;35:6
**distinguished (1)**
31:14
**district (4)**
39:7,12,16,18
**division (1)**
39:4
**docket (4)**
12:3,5;43:1,17
**documents (1)**
4:4
**documents[113] (1)**
3:21
**documents95 (1)**
4:9
**dollars (3)**
20:21;25:15;32:2
**done (3)**
17:12,16;19:7,10;
25:9
**doormat (1)**
36:11
**double-check (1)**
12:18
**Doug (1)**
28:4
**DOUGLAS (2)**
6:8;7:12
**down (3)**
16:5;23:3,3
**downloaded (1)**
43:18
**driven (1)**
39:1
**drop (1)**
24:3
**duplicate (2)**
32:7;34:7
**during (2)**
31:4;34:21

**duties (1)**
38:22

**E**

**earlier (3)**
37:13,14;41:8
**easily (1)**
33:9
**Eastern (2)**
39:15,18
**easy (2)**
10:17;11:17
**ECS (1)**
10:21
**EDC (1)**
21:24
**effect (1)**
17:6
**effective (10)**
14:15,18,25;16:21,
22;17:5,5;18:10,12,
17
**effectively (1)**
20:6
**either (7)**
12:5;14:4;16:7;
26:12;27:15;31:15,
16
**elevator (1)**
38:24
**else (3)**
13:23;15:2;26:19
**elsewhere (1)**
37:7
**emailed (2)**
23:14;43:12
**end (4)**
12:14;33:25;
38:21;43:17
**enforce (1)**
18:19
**enhanced (2)**
30:19;31:7
**entered (2)**
8:20;13:7
**entities (4)**
11:2,5,6;43:2
**entitled (2)**
11:24;30:7
**entitlement (1)**
33:20
**entity (1)**
26:11
**Entry (2)**
3:10,16
**equal (1)**
39:14
**equipment (1)**
38:7
**equity (1)**
31:9
**eScribers (1)**

4:21
**ESQ (2)**
6:8,17
**essentially (1)**
17:14
**establishing (1)**
21:13
**estate (3)**
18:12,14;20:6;
21:5;31:8;36:14
**evaluate (1)**
33:10
**even (3)**
9:17;36:6,19
**everybody (4)**
30:13;37:6;42:14,
14
**everyone (1)**
30:18
**everyone's (1)**
37:7
**examination (1)**
24:17
**example (4)**
20:17;21:16;23:4;
38:6
**executory (5)**
14:7,11,13,20,23
**existing (2)**
35:14,16
**expect (1)**
34:13
**expedited (1)**
29:8
**explicit (1)**
18:1
**extent (1)**
37:4
**extracted (1)**
33:9
**extraordinary (1)**
31:3

**F**

**F2d (1)**
39:19
**face (1)**
10:18
**fact (6)**
10:14;11:24;
29:12;30:25;36:10;
40:11
**facts (1)**
31:2
**falling (2)**
37:10,11
**falls (1)**
38:3
**far (1)**
38:2
**fast (1)**
41:6

**203-205 NORTH 8TH STREET LOFT, LLC**
**3052 BRIGHTON FIRST, LLC**

March 23, 2021

**favor (2)**
22:18;28:24
**favorable (3)**
19:12,14,17
**February (1)**
23:23
**fed (4)**
8:12;23:12,14;
40:11
**federal (1)**
39:7
**fee (3)**
26:24,24;27:20
**feel (1)**
10:19
**Fees (13)**
3:3;4:2,4,7,9,11;
25:14;27:7;31:17,
19;32:21;33:25;
38:25
**FEUERSTEIN (43)**
7:7,8,8;8:3,4,10;
9:11,15,16;10:9,11;
11:16,19;12:8,10,16,
21,25;13:3,4;16:19,
20;22:10;23:12,15;
24:3,6,15,15,24;
25:23,24;27:10,10;
40:6,7,20,21;41:21;
42:7,8;43:22,24
**Feuerstein's (1)**
36:13
**few (2)**
25:9;43:2
**fight (3)**
31:16;36:3,10
**file (6)**
8:20;10:15;12:3;
16:9;27:15,16
**filed (25)**
3:2,3,22;4:2,4,8,
10,11;7:21,22;10:7;
11:13;14:4,5,22;
16:3,4;23:23,24;
28:16,17;29:3,5,11,
12
**fill (1)**
22:14
**filling (1)**
22:17
**final (1)**
39:13
**finally (1)**
7:12
**find (4)**
11:2;14:11;30:25;
36:20
**finding (1)**
32:25
**finds (1)**
21:4
**fine (2)**
17:25;29:15

**firm (1)**
7:9
**First (14)**
7:3;9:13;13:1,14;
17:1;25:15;27:4;
28:7;30:1;33:12,13,
21;36:8;38:10
**fit (2)**
18:20;41:3
**five (6)**
30:2;35:22,22;
36:7,7,7;39:14
**fix (1)**
32:19
**fixed (1)**
25:3
**fled (1)**
37:7
**flow (1)**
34:2
**focused (1)**
19:6
**folks (1)**
13:17
**follows (1)**
32:22
**forbearance (3)**
37:15,18;38:1
**foreclosure (1)**
35:10
**forgotten (1)**
43:5
**forth (1)**
30:17
**forty (1)**
33:11
**forward (5)**
8:17;9:18,19,22;
40:8
**found (1)**
31:12
**frame (1)**
17:24
**frankly (1)**
31:15
**fraudulent (5)**
20:4,13;21:11,12,
15
**Friday (1)**
8:19
**fulfillment (1)**
25:20
**full (1)**
25:7
**further (3)**
9:9;10:7,12
**Fusion (1)**
15:20
**future (1)**
17:25

**G**

**garbage (2)**
30:23;38:2
**Gasser (1)**
39:18
**Gather (4)**
26:1,3,4,12
**G-A-T-H-E-R (2)**
26:8,13
**Gauntlett (1)**
4:20
**generate (1)**
29:1
**given (2)**
35:5;36:21
**glad (1)**
42:13
**GN (2)**
26:10,12
**goes (1)**
10:14
**Good (6)**
7:7,15,17;21:25;
36:15;43:25
**graciously (1)**
35:25
**granting (1)**
35:3
**Gregory (17)**
3:2,3;4:3,5,8,8,10,
11;6:23;7:15;26:10;
28:3,19;30:9,15;
35:8;37:12
**ground (1)**
38:12
**Group (3)**
3:11,18;15:20
**guess (3)**
24:8;26:10;32:9
**guidelines (1)**
30:20

**H**

**half (4)**
8:14,15;37:19,19
**Hamilton (1)**
21:23
**Hamptons' (1)**
33:15
**handle (1)**
42:12
**hands (1)**
36:5
**Hang (2)**
31:21;32:13
**happen (1)**
19:8
**happening (3)**
19:11;36:16;37:15
**happens (2)**
13:5;40:23
**happy (1)**
42:14

**hate (1)**
38:21
**head (1)**
18:4
**head-scratcher (1)**
19:2
**hear (3)**
12:22;13:14;42:17
**heard (1)**
27:9
**Hearing (4)**
3:6;9:9;26:24;
28:14
**hearings (1)**
41:6
**held (1)**
17:14
**helpful (1)**
25:25
**here's (1)**
28:7
**higher (1)**
30:6
**hit (2)**
23:11,16
**hits (1)**
8:18
**hold (8)**
9:20;11:3,3;14:11;
41:5;43:9,13,14
**home (1)**
30:22
**homelessness (1)**
33:5
**honest (2)**
15:6,7
**Honor (96)**
7:7,15,17,19;8:3,7,
16,19;9:1,5,6,11,15,
17,19,20;10:1,5,6,11,
15;11:21;12:8,21;
13:3,10,18;14:3;
15:12,17,24;16:11,
18;17:9,11,11;19:4,
24;20:16;21:8,8;
22:10,14;23:20,24;
24:1,4,15,25;25:1,5;
26:10,21,22,23,25;
27:5,8,10;28:3,19,
20;29:7;30:8,15;
31:24;32:6;33:7,21;
34:20;35:9,20;36:8,
9;37:12;38:5;40:1,6,
22;41:16,18,22,25;
42:6,9,16,18,19,23,
23;43:4,11,22,25;
44:1,2
**hopefully (1)**
40:10
**host (1)**
30:13
**housing (2)**
33:2,4

**Howard (2)**
40:17;41:3
**huge (1)**
31:22
**hurt (1)**
41:1

**I**

**idea (1)**
22:24
**II (3)**
3:11,18,22
**imagine (1)**
40:22
**impact (1)**
17:18
**impaired (1)**
22:5,11,21
**important (1)**
20:5
**Inc (2)**
39:15,19
**include (1)**
8:23
**includes (1)**
32:14
**including (2)**
18:15;39:6
**income (1)**
39:14
**incorporate (1)**
27:13
**Incorporated (2)**
26:10;27:13
**incorrect (1)**
29:19
**Indeed (1)**
39:7
**independently (1)**
35:25
**indicate (1)**
16:2
**indicated (4)**
8:12;27:11;28:20,
22
**indicates (1)**
43:7
**indicating (1)**
9:7
**indulge (1)**
8:17
**Infanti (1)**
39:18
**inform (1)**
9:21
**information (1)**
13:19
**inner (1)**
33:10
**inner-city (2)**
32:24;36:3
**inquire (1)**

**203-205 NORTH 8TH STREET LOFT, LLC**
**3052 BRIGHTON FIRST, LLC**

**March 23, 2021**

26:22
**instance (1)**
36:5
**instead (1)**
33:24
**instruments (1)**
18:25
**insurance (1)**
29:20
**intact (1)**
26:7
**intent (2)**
21:13,14
**intentional (2)**
21:11,15
**interest (2)**
25:13;36:17
**interesting (1)**
18:9
**interference (5)**
17:20;21:7,18,25;
23:8
**International (1)**
39:19
**interpretation (1)**
39:8
**into (7)**
13:7;21:4,25;
27:13,17;34:3;36:23
**Investor (1)**
6:22
**involved (1)**
32:18
**issue (9)**
16:19;18:1;22:3,4;
27:16;30:16;33:1;
35:9;40:9
**issues (5)**
13:9;27:14,14;
29:17;33:6

**J**

**Jamaica (1)**
39:22
**January (1)**
23:23
**Jason (1)**
4:3
**Jerold (9)**
7:7;8:3;9:15;
12:10;13:3;16:20;
24:15;27:10;40:6
**Judge (4)**
27:21,23;28:4;
40:18
**JUSTICE (1)**
6:11

**K**

**keep (1)**
40:13

**keeping (2)**
37:25;40:19
**Ken (1)**
11:9
**KHODOROVSKY (28)**
6:17;7:17,18;9:1,
4,5,5,25;10:1,1,4,5,
10;23:18,20,20;
26:21,21;27:5,5;
41:16,17;42:16,17,
22;43:25;44:3,6
**kind (3)**
18:2;35:4;37:23
**kinds (1)**
37:14
**knew (1)**
29:7
**known (1)**
20:1
**Kriss (1)**
7:8

**L**

**large (1)**
20:3
**LaSpina (58)**
3:2,3;4:3,5,8,8,10,
11;6:23;7:15,16,16;
15:11,11,12,17,24;
16:10,13,18;25:24;
26:2,5,9,10,16,18;
28:2,3,3,19,20,24;
29:1,6;30:8,9,10,15,
15;31:14,24;32:6,16;
33:7,21;34:13,20;
35:8,8,16,20;36:23;
37:2,12,12;38:5;40:1
**LaSpina's (1)**
26:24
**last (4)**
16:25;28:20;
30:16;36:19
**late (2)**
24:7,8
**later (4)**
14:24;16:9;28:17;
29:12
**Law (10)**
11:7,9;13:25;22:7;
35:23,24;37:25;39:4,
5,5
**lease (8)**
14:20,24;15:22;
16:3;17:18;25:24;
26:6;40:9
**leases (5)**
14:8,14,16;15:3;
17:20
**least (3)**
17:17;40:21,25
**ledgers (1)**
20:14

**legal (2)**
25:14;31:5
**legally (1)**
21:21
**lender (1)**
34:5
**lenders (1)**
36:10
**Leonard (2)**
6:3;7:13
**less (1)**
21:22
**Lexington (1)**
6:4
**life (1)**
18:21
**Lin (1)**
11:9
**line (1)**
24:3
**liquidating (1)**
20:19
**list (4)**
15:19;36:25,25;
42:11
**listed (3)**
11:14;14:4,20
**lists (1)**
22:3
**litigating (1)**
20:22
**little (6)**
7:20;9:7;18:25;
19:1;21:5;25:11
**LLC (8)**
3:22,23;4:21;6:21,
22;7:3,3;39:13
**LLP (1)**
6:2
**local (1)**
17:25
**locate (1)**
42:25
**Loft (1)**
7:3
**long (1)**
18:1
**look (2)**
16:19;25:19
**looked (3)**
11:15;43:8,10
**looking (8)**
12:3;15:20,21;
39:4,4;41:2,7;43:1
**looks (1)**
19:7
**lot (7)**
12:23;17:19;
19:11;23:7;28:9;
35:10;39:4
**Lots (5)**
19:14,16;35:5,5,5

**M**

**mail (1)**
10:22
**makes (1)**
23:7
**mall (1)**
36:2
**management (14)**
32:7,16,21;33:18;
34:4,5,7,18;36:4,21;
37:3,10;38:3,4
**manager (9)**
32:3,10,11,12,15;
33:24,25;34:1,14
**managers (5)**
34:1,15;35:20;
38:14,20
**managing (3)**
33:16;36:2;37:16
**many (4)**
19:25;34:16;35:6,
6
**March (7)**
28:14,16,18;29:7,
9,11,13
**mark (1)**
39:24
**material (1)**
20:7
**materials (2)**
12:2;21:12
**matter (3)**
7:2;26:23;41:21
**matters (8)**
21:14;41:13,14,
25;42:5,11,15,21
**May (14)**
7:17;12:3,13;
17:20;20:16;21:8;
24:1;25:4;28:9;30:9;
31:9;33:4;37:5;
40:12
**Maybe (3)**
18:7;23:6;26:13
**mean (23)**
7:20,21;9:16;12:8,
16,17;16:23,25;17:1;
21:21;24:20;25:23;
28:8;31:22;33:7,9,
15;38:16;39:23;
40:7,24;41:9,10
**mend (1)**
40:4
**messaging (1)**
29:19
**might (3)**
7:23;22:3;41:6
**mine (1)**
43:12
**minute (10)**
20:10,10,11;27:4;

31:21;32:13,20;
39:20;40:14,15
**missed (1)**
43:9
**missing (2)**
10:20;24:23
**mixed (1)**
15:13
**moment (1)**
13:19
**moments (1)**
43:18
**money (5)**
23:10;31:9,23;
40:4,12
**money's (1)**
40:7
**monies (2)**
35:22,22
**months (1)**
25:9
**moratorium (2)**
35:11;37:25
**more (13)**
15:4;17:19,20;
21:4;23:7;30:22,22,
23;33:10;36:19;
37:8;39:16,25
**Moreover (1)**
31:4
**morning (2)**
41:25;42:5
**Motion (15)**
3:2,10,16,16,21;
4:2,4,7,9,10;8:21;
16:4,9;28:1;33:22
**move (2)**
8:17;40:8
**much (5)**
7:19;10:6;44:4,6
**Musso (1)**
7:5
**must (1)**
43:8
**myself (1)**
38:14

**N**

**N8th (1)**
6:21
**Nail (6)**
26:3,4,5,8,14,14
**name (5)**
9:13;11:6;15:15;
25:21,22
**names (4)**
10:24;11:3,5;
13:24
**nature (3)**
31:1;34:6;35:24
**NAZAR (9)**
6:17;7:18;9:5;

**203-205 NORTH 8TH STREET LOFT, LLC**
**3052 BRIGHTON FIRST, LLC**

**March 23, 2021**

10:1;23:20;26:21;
27:5;41:17;42:16
**neat (1)**
12:6
**necessarily (1)**
9:16
**need (11)**
7:10;15:25;19:19;
20:11,11,12,13;21:9;
24:16;25:14;40:12
**needs (3)**
13:2;38:9,10
**neglected (1)**
12:3
**negotiating (1)**
41:20
**neither (1)**
31:18
**New (6)**
4:23;6:6,15;18:23;
21:24;39:21
**next (4)**
7:2;13:14;18:24;
21:6
**nice (3)**
10:17;12:6;25:11
**ninety (1)**
35:21
**noise (2)**
12:23;42:18
**None (2)**
22:23;34:21
**nonresidential (2)**
14:7;15:3
**nor (1)**
31:18
**normally (1)**
28:15
**North (11)**
6:22;7:3,11,21;
8:23;13:10;15:13;
27:11;29:22;32:22;
33:13
**note (1)**
23:21
**notice (8)**
14:4,10,21,22;
15:1;16:3;17:7,23
**no-vote (3)**
22:6,22,24
**nuanced (1)**
36:6
**number (8)**
8:13;23:13,15;
25:12;40:11;43:1,16,
17
**numerous (1)**
34:18
**NY (3)**
4:23;6:6,15

**O**

**objecting (1)**
31:19
**objection (1)**
24:13
**objective (1)**
13:4
**obviously (3)**
7:24;29:7;40:8
**occurred (1)**
34:21
**o'clock (1)**
41:3
**off (3)**
18:4;24:3;41:4
**Office (2)**
6:12;21:25
**Offices (2)**
11:8,9
**old (2)**
21:7;39:5
**older (1)**
39:16
**Once (1)**
16:15
**one (16)**
11:24,24;13:15;
15:4;17:1,4;18:23;
23:5;25:6;32:3;
34:16;35:6;37:14;
39:25;41:5;43:4
**only (9)**
8:14;10:22;11:24;
12:19,23;13:10;21:9,
10;26:14
**onto (1)**
36:1
**open (1)**
42:1
**operates (1)**
26:11
**operating (4)**
15:19;23:23;27:7;
32:21
**operations@escribersnet (1)**
4:25
**opposed (1)**
9:24
**opposite (2)**
35:7;39:21
**option (1)**
17:17
**Orange (1)**
20:9
**Order (17)**
3:10,17;8:19;9:17,
19;10:13;16:2,10,13,
16;18:1,2;21:4;
28:12,21;29:6,14
**ordered (1)**
28:14
**orders (1)**
28:5
**others (1)**

17:21
**otherwise (5)**
16:5;20:5;30:6;
33:4;34:19
**ourselves (1)**
22:17
**out (12)**
11:23;16:1;17:7,8,
10,14;22:14,18;
25:21;34:11;35:22;
36:7
**over (2)**
33:19;34:25
**overbid (1)**
25:15
**overcharge (2)**
13:9;27:18
**overlook (1)**
29:16
**oversight (1)**
11:22
**own (1)**
33:16
**owned (1)**
18:17

**P**

**package (3)**
10:18,21;12:1
**packages (1)**
11:23
**pages (1)**
30:19
**paid (4)**
35:19;37:24,24;
38:10
**pandemic (5)**
31:4;34:22;35:4,
24;38:23
**paper (1)**
38:18
**papers (1)**
7:25
**part (8)**
13:6,8;15:13;31:5;
32:14;33:3,22;36:25
**particular (1)**
21:13
**parties (5)**
10:22,23;12:1;
13:17;31:17
**Partners (1)**
31:21
**Partners' (1)**
32:24
**party (5)**
14:10,15;15:22;
17:7;38:24
**passed (1)**
23:15
**pay (3)**
36:14;37:18,19

**payment (1)**
8:1
**payments (1)**
32:14
**people (6)**
11:5;14:3;17:3;
21:24;28:8;30:22
**percent (8)**
29:22;30:2;35:21,
22,22;36:7,7;39:14
**percentage (2)**
31:22;39:10
**Perhaps (1)**
15:9
**periodically (1)**
35:18
**permit (1)**
39:9
**ph (8)**
11:4,7,8,10;15:20;
21:24,24;26:10
**phone (2)**
15:9;24:18
**PICK (10)**
6:2,8;7:12,12;
27:15,20,21,23;28:4,
4
**place (2)**
33:19
**plan (37)**
8:22;9:9,10,17,21,
22,24,24;10:7,12,16;
12:13,14;13:2,4,6,8;
14:18;15:23;16:7,15,
22,25;17:3,4,5;
18:24;19:17;20:20;
22:4,15,16,19;24:22,
22;27:13;36:15
**plans (2)**
17:12;20:1
**please (5)**
7:18;9:13;14:9
**plus (2)**
28:15;39:11
**point (3)**
8:16;10:11;17:25
**pointed (1)**
18:2
**pointing (3)**
17:7,8,10
**policy (1)**
33:1
**population (1)**
33:3
**possession (3)**
20:11,12,13
**possibly (1)**
33:2
**post-confirmation (1)**
41:5
**post-petition (1)**
25:12
**potential (3)**

17:14,16,17
**Potentially (1)**
8:24
**power (2)**
19:21,22
**PPP (1)**
38:6
**predated (1)**
26:6
**prefer (1)**
9:25
**preference (1)**
21:10
**preferences (2)**
20:4,12
**prepared (1)**
27:1
**PRESENT (1)**
6:20
**presentation (3)**
8:17;9:18,20
**Preservation (2)**
18:9;33:2
**presumably (2)**
25:9;37:25
**previously (1)**
14:16
**principal (3)**
21:23;23:10;36:4
**principal's (1)**
23:9
**principle (2)**
33:8,9
**prior (5)**
14:24;16:4,20,21;
18:21
**priority (1)**
38:9
**privilege (4)**
18:23;19:20;20:5,
15
**privileges (3)**
18:15,19;20:21
**probably (3)**
25:11;38:25;40:7
**problem (5)**
9:2,3;11:18;19:5;
28:7
**Procedures (3)**
3:12,18;25:7
**proceed (1)**
20:22
**proceedings (1)**
44:7
**process (3)**
16:5,6;17:13
**product (3)**
18:16;19:20;20:15
**proffer (3)**
7:11;24:12,17
**proof (1)**
14:5
**proper (1)**

**203-205 NORTH 8TH STREET LOFT, LLC**
**3052 BRIGHTON FIRST, LLC**

*March 23, 2021*

10:19
**Properties (7)**
11:7;28:1;32:4,11,
24,24;33:16
**Property (17)**
3:13,19;24:21;
26:17;32:3,10,11,12,
15;33:11,15,24,25;
35:17,20;36:3;38:20
**proponent (4)**
18:18,18;20:5;
22:18
**proponents (3)**
14:23;18:11,14
**proposed (2)**
7:13;25:6
**proposing (1)**
41:18
**proposition (2)**
22:9;39:21
**provide (3)**
12:10,12;16:11
**provided (5)**
12:9;28:15;29:10;
30:20,22
**provides (1)**
18:10
**providing (2)**
17:23;29:7
**provision (2)**
14:7;18:24
**provisions (1)**
14:19
**public- (1)**
32:25
**public-policy (1)**
33:6
**public-subsidized (1)**
33:4
**purchase (1)**
38:6
**purchaser (3)**
17:15,16,17
**purposes (1)**
37:16
**Pursuant (4)**
3:13,19;32:6;
33:22
**put (4)**
22:15;35:10;
41:12;42:1

## Q

**query (1)**
16:16
**quite (3)**
16:22;18:5;24:21
**quote (1)**
22:2

## R

**raise (1)**
13:12
**rate (1)**
25:13
**RE (5)**
3:21;4:3,9;39:12,
15
**Real (3)**
3:12,19;21:5
**really (4)**
15:25;19:6;28:8;
35:9
**Realty (2)**
3:11,17
**reason (1)**
43:15
**reasons (1)**
30:13
**recall (1)**
43:1
**receipts (3)**
29:24;30:3,5
**receive (2)**
35:15;39:9
**received (3)**
36:7;39:11,14
**receiver (22)**
3:2,2,3,3;4:2,3,5,7,
9,10,10,11,11;6:23;
7:16;15:9;32:5;36:3,
12;37:11;39:13;
42:24
**receivers (2)**
35:3;36:11
**receiver's (2)**
27:20;31:17
**receivership (3)**
30:17,20;34:1
**receiverships (2)**
35:14,16
**receiving (1)**
31:5
**recent (1)**
39:17
**recognize (1)**
37:5
**record (5)**
11:21;17:12;
19:25;29:10;42:18
**records (4)**
15:18;20:12,14;
21:9
**reference (5)**
8:13;23:12,14;
29:11;40:11
**reflect (1)**
32:21
**reflects (1)**
10:21
**refreshing (1)**
23:15
**reject (3)**
15:22;16:8,24

**rejected (4)**
14:16,17;15:25;
16:5
**rejecting (1)**
14:7
**rejection (3)**
14:14;17:6;25:20
**related (5)**
3:21;4:4,9;13:9;
36:22
**Relating (2)**
3:12,18
**relatively (1)**
40:10
**release (1)**
28:6
**remember (1)**
25:3
**remind (1)**
14:9
**rent (4)**
26:6,9;31:10;
37:19
**rents (1)**
37:24
**REO (1)**
11:7
**R-E-O (1)**
11:7
**report (1)**
40:22
**reports (2)**
23:23;27:7
**reposes (1)**
31:9
**representative (1)**
7:13
**represented (1)**
27:14
**representing (3)**
13:16;29:22;30:2
**Reproductions (1)**
21:24
**request (3)**
24:2;37:17;38:2
**require (1)**
33:4
**required (1)**
17:24
**requirements (1)**
14:19
**researched (1)**
35:25
**residential (2)**
14:16;33:11
**resources (2)**
34:2;38:7
**respect (10)**
7:11;8:7,22;13:5;
27:14,16,18;28:6,6;
40:23
**responded (1)**
43:4

**responsibility (2)**
38:18,22
**restrooms (1)**
38:18
**result (3)**
30:20,21,21
**resulted (1)**
30:5
**retain (1)**
38:14
**Retention (2)**
3:11,17
**return (1)**
31:9
**Right (34)**
8:9;12:18,25;
13:11,24;14:6;15:5,
15;16:12,16;18:19,
22;19:9,18;24:22,24;
25:17;26:19;27:19,
25;28:13,23,25;29:3;
30:8;31:13;33:17;
34:12;37:1;40:15;
41:2;42:13;43:19,20
**rights (3)**
18:9,16,19
**risk (1)**
33:5
**Robertson (2)**
6:3;7:13
**roll (1)**
26:9
**Rosenberg (1)**
7:5
**Rosewood (2)**
3:11,17
**round (1)**
25:12
**rule (1)**
17:23
**Rules (4)**
3:14,20;17:24,25
**runs (1)**
20:8

## S

**Sackoor (1)**
4:3
**safe (2)**
30:21;38:16
**Sale (7)**
3:12,12,18,19;
16:1,9;17:13
**Sam (1)**
11:8
**same (1)**
29:18
**save (1)**
22:16
**Savings (1)**
39:22
**saw (2)**

29:6;43:5
**saying (1)**
12:7
**schedule (1)**
11:14
**schedules (1)**
14:5
**scrutinize- (1)**
34:8
**Second (7)**
4:7;11:3;14:11;
27:25;29:17;41:5;
43:3
**secondary (1)**
33:23
**Section (1)**
14:19
**Sections (2)**
3:13,20
**secured (12)**
7:8;8:16;22:10,20;
31:18;34:4,9,10,10,
11,12;36:10
**seeing (1)**
11:22
**seeking (4)**
29:18,21;30:1;
33:19
**seem (1)**
12:11
**seems (2)**
16:13;17:6
**selling (1)**
24:21
**sending (1)**
22:17
**sense (1)**
23:7
**separate (5)**
16:2,4;18:2;32:4,5
**serve (2)**
13:16;28:10
**served (15)**
10:22;11:25;12:1,
9;13:20;14:22;15:2,
23;28:11,14,16,17;
29:11,12;43:3
**service (19)**
9:3;10:18,20,21,
25;11:11,12;12:4,11,
13,13;24:20;25:18;
28:15;30:22;37:17;
42:25;43:4,7
**services (7)**
30:19,19;31:1,3;
32:7,12;34:7
**serving (1)**
33:3
**set (2)**
30:17;41:8
**setting (1)**
35:23
**settle (1)**

203-205 NORTH 8TH STREET LOFT, LLC
3052 BRIGHTON FIRST, LLC

March 23, 2021

36:18
**settlement (16)**
7:25;8:5,8,21,23;
9:8,22;10:7,14,14,
15;13:6,7;27:12,16;
40:24
**seventeen (1)**
33:14
**Seventh (1)**
4:22
**several (2)**
41:24,24
**shall (5)**
14:17;18:11,13,17,
18
**shock (1)**
21:23
**short (3)**
40:3,10,13
**shorten (1)**
29:10
**shortened (3)**
28:15,21;29:2
**shortening (1)**
28:12
**SHOSHANA (2)**
6:21;7:10
**side (1)**
34:12
**sign (2)**
9:17,19
**signage (1)**
38:23
**signed (3)**
7:24;8:5;28:5
**significant (3)**
31:8,10;33:3
**signing (1)**
8:11
**simple (2)**
20:23;24:21
**simply (2)**
22:15,16
**single-asset (1)**
21:5
**situation (8)**
13:2;21:3;23:22;
25:4;31:18;36:2,20;
37:25
**situations (3)**
17:14;35:2;36:1
**sleepy (1)**
21:7
**slow (1)**
16:5
**small (1)**
31:23
**Snag (1)**
11:8
**solicitation (2)**
10:18,21
**Somebody (2)**
8:1;17:2

**Someone (5)**
12:21;31:9;32:19;
36:2;39:1
**sorry (5)**
9:15;12:21;22:16;
24:6;27:23
**sort (2)**
7:24;28:22
**sought (2)**
31:6,19
**sounds (3)**
7:25;36:14,15
**source (1)**
18:5
**Southern (1)**
39:12
**Spa (7)**
26:3,4,5,8,10,14,
14
**speak (2)**
9:14;23:16
**SPEAKER (1)**
44:2
**special (2)**
30:24;31:3
**split (1)**
22:8
**staff (1)**
37:9
**stake (2)**
33:1,6
**state (11)**
9:13;13:25;34:3;
35:2,3,9,10,14,17;
36:24;38:25
**statement (5)**
8:22;13:9;15:19;
22:20;27:17
**statements (1)**
32:21
**STATES (3)**
6:11,12;7:18
**Status (4)**
3:8;27:4;40:25;
41:6
**statute (1)**
31:25
**statutory (3)**
31:2;32:14;33:20
**stay (2)**
28:6;35:11
**still (6)**
10:6;15:14;23:11,
16;29:17;41:19
**stipulation (1)**
36:6
**stocks (1)**
33:2
**stood (1)**
39:21
**story (1)**
23:9
**strange (1)**

23:22
**Street (6)**
3:22,23;6:13,21;
7:3;15:13
**stretch (1)**
33:5
**stretched (1)**
38:8
**string (1)**
40:13
**strip (1)**
36:2
**Studio (1)**
39:15
**submitted (2)**
39:23,24
**substantially (1)**
30:6
**successful (1)**
14:21
**sudden (1)**
21:6
**Suite (3)**
4:22;6:5,14
**sum (3)**
8:6,10,14
**supplement (1)**
35:1
**support (1)**
7:22
**suppose (1)**
40:25
**supposed (5)**
8:6,10,15;28:10,11
**sure (9)**
10:6;11:22;15:17,
22;19:21;38:15,17;
40:4;43:13
**surrender (1)**
18:25

**T**

**talk (3)**
9:4;27:3,3
**talked (2)**
25:4;37:14
**talking (3)**
31:8;32:1;37:23
**Tang (1)**
11:8
**task (1)**
22:17
**team (1)**
32:17
**TELEPHONICALLY (3)**
6:17,22,23
**telling (1)**
32:10
**tells (1)**
17:2
**Temporary (2)**
6:23;7:16

**ten (2)**
20:20;33:12
**tenant (9)**
13:2;15:5,8,14,16;
25:22;26:15;27:14;
37:17
**tenants (3)**
10:24;14:9;38:15
**tens (3)**
32:1,2,2
**Tenth (1)**
22:23
**ten-year (1)**
26:5
**testimony (3)**
24:8;10,11
**Thanks (1)**
43:23
**the- (1)**
8:2
**thereafter (1)**
16:16
**there'll (1)**
16:2
**though (3)**
9:17;14:6;24:22
**thought (5)**
9:16;16:24,24;
17:2;39:20
**thousands (1)**
32:2
**three (10)**
10:22;11:2,5,6;
13:15,16,17,24;
30:19;37:20
**threshold (2)**
8:25;9:2
**Thursday (1)**
8:15
**till (2)**
17:5;29:5
**timely (1)**
28:10
**times (3)**
19:14,16;33:19
**today (5)**
8:15;9:18;10:10;
12:15;13:12
**together (1)**
40:19
**told (4)**
8:14;24:3;30:10,
11
**took (1)**
11:20
**top (2)**
18:4;43:16
**total (6)**
29:23,24;30:3,4;
32:22;39:14
**totality (1)**
31:7
**totally (2)**

30:12;35:6
**tough (1)**
37:18
**Towers (1)**
39:22
**traffic (1)**
38:12
**Transcribed (1)**
4:20
**transcript (2)**
29:4,11
**transfer (6)**
18:18;20:4,21;
21:11,12,15
**transferor's (1)**
21:14
**transferred (1)**
20:19
**transfers (1)**
20:4
**Treatment (1)**
14:13
**truly (1)**
9:6
**trust (2)**
7:13;20:19
**Trustee (14)**
6:12;7:19;9:6;
10:2;11:1,13;18:21,
22;21:22;23:21;
26:22;27:6,7;41:17
**try (1)**
24:7
**trying (3)**
20:14;29:13;37:9
**turn (1)**
27:20
**two (10)**
13:16;15:12;19:1;
28:5,17;29:12;
30:18;33:19;37:19;
41:11
**typing (1)**
12:22

**U**

**unclear (2)**
7:20;19:1
**under (9)**
8:21;14:18;17:23,
24;18:16;29:20;
30:7;34:23,24
**understood (2)**
7:23;33:7
**unexpired (2)**
14:14,24
**UNIDENTIFIED (1)**
44:2
**unimpaired (1)**
22:19
**unique (5)**
30:14;31:3;36:1;

203-205 NORTH 8TH STREET LOFT, LLC
3052 BRIGHTON FIRST, LLC

March 23, 2021

38:23;39:1
**UNITED (3)**
6:11,12;7:18
**units (3)**
33:12,12,14
**unless (4)**
10:20;14:20;20:7;
32:18
**unrelated (5)**
36:22,23;37:1,2,2
**unsecured (1)**
22:22
**unsupported (1)**
23:3
**untimely (1)**
28:14
**up (5)**
8:1;12:14;35:9;
37:25;40:15
**uphill (1)**
39:24
**uploaded (1)**
28:5
**upon (7)**
9:22;10:22,25;
11:2;37:6,6;40:11
**use (6)**
15:13;20:16;22:3;
25:12;38:21,24
**used (2)**
18:21;19:25
**using (4)**
21:15;29:19;30:4;
39:10
**usually (3)**
17:19;20:1;36:1

**V**

**valuable (1)**
17:20
**value (2)**
31:1,6
**Varick (1)**
6:13
**vendors (2)**
30:21;38:15
**version (1)**
12:1
**via (1)**
24:11
**view (1)**
29:19
**Vincent (2)**
11:8,9
**virtually (1)**
32:17
**virtue (1)**
13:1
**vote (7)**
11:25;25;22:5,6,
12,12,18
**voted (1)**

22:23
**votes (1)**
22:5
**voting (1)**
11:25

**W**

**wait (10)**
12:7;16:14,14;
20:10,10,10;32:20,
20;33:25;40:14
**waiting (4)**
7:25;8:1;13:5;
27:12
**waive (3)**
18:19,23;20:15
**waiver (1)**
19:20
**walls (1)**
38:13
**wants (2)**
8:1;36:13
**warrant (1)**
31:2
**waste (1)**
30:23
**way (12)**
9:12;12:6;14:8;
17:4,18;21:4,15;
22:15;38:19;39:5,6;
43:20
**website (1)**
43:18
**week (1)**
23:7
**weeks (1)**
37:20
**weigh (1)**
31:1
**weighed (1)**
18:6
**WEINER (16)**
7:5,5,5;8:4,20;
18:6;19:3,4,6,10,15,
18;23:9,11,14;40:11
**Weintraub (1)**
21:22
**West (2)**
39:13,22
**Westchester (2)**
30:25;33:3
**what's (4)**
23:9;25:4;33:10;
36:15
**whenever (1)**
23:8
**Whereupon (1)**
44:7
**whole (2)**
26:17;30:13
**who's (2)**
15:9;36:3

**Williamsburg (1)**
33:13
**willing (3)**
13:11,12;29:16
**wire (4)**
8:6,10,13,18
**wired (2)**
8:14,15
**within (1)**
40:9
**without (5)**
12:2;20:21;34:14;
37:20;38:20
**Wong (2)**
11:8,9
**work (11)**
8:25;18:16;19:20;
20:15;32:17;37:5,8,
9,23;38:2;41:20
**works (2)**
41:22,23
**write-up (1)**
11:4
**wrong (2)**
17:1,2

**Y**

**York (5)**
4:23;6:6,15;21:24;
39:21

**Z**

**ZABICKI (1)**
6:2
**Zinman (40)**
7:9;11:20,21,22;
13:18,18,23;14:1,3;
15:6,7;17:9,11,12;
19:24,24;20:16;21:1,
8,19;22:14,16;23:2;
24:1,1,5,7,14;25:1,5,
5;41:24;42:3,5,11,
23,24;43:7,11,15
**Zoom (1)**
24:12

**1**

**1,323,984.03 (1)**
29:23
**1,454,663 (1)**
30:4
**1,824,397.70 (1)**
30:4
**10:00 (1)**
42:11
**10:30 (1)**
42:12
**100,000 (1)**
25:15
**10001 (1)**

4:23
**10014 (1)**
6:15
**10017 (1)**
6:6
**1006 (1)**
6:14
**105a (2)**
3:13,20
**10th (4)**
28:18;29:5,7,13
**11 (2)**
21:6;41:3
**11:30 (9)**
41:11,12;42:2,3,8,
12,12,15,19
**111 (1)**
43:1
**112 (1)**
10:21
**1123 (3)**
3:13,20;14:20
**119 (1)**
3:2
**1200 (1)**
6:5
**128 (1)**
4:10
**13 (1)**
42:14
**13th (5)**
41:4,20,20;42:19;
43:20
**1415 (1)**
39:12
**150th (1)**
39:13
**163,953.04 (1)**
30:2
**176 (1)**
39:19
**1st (2)**
3:22,23

**2**

**2002 (2)**
3:14,20
**201 (1)**
6:13
**2020 (3)**
10:22;32:21,22
**203-205 (7)**
6:21;7:2,21;15:13;
23:22;26:16;32:22
**20-40793-nhl (1)**
3:4
**20-40794-nhl (6)**
3:6,8,14,23;4:5,12
**21 (3)**
14:24;28:15;39:16
**29th (1)**
10:22

**3**

**3 (1)**
28:15
**3052 (9)**
3:22,23;7:3,13;
13:1;27:4,6;30:1;
32:23
**308 (1)**
39:16
**30th (1)**
25:10
**352 (1)**
4:22
**358 (1)**
39:19
**36 (2)**
33:22;36:25
**363 (2)**
3:13,20
**365 (1)**
14:19
**369 (1)**
6:4
**39:18-25 (1)**
29:4

**4**

**43,155.76 (1)**
32:22
**435 (1)**
20:18
**4th (1)**
28:14

**5**

**5 (1)**
29:22
**54 (1)**
39:15
**591,243.87 (1)**
29:25

**6**

**6 (2)**
21:24;22:22
**6.5 (1)**
18:10
**6004 (2)**
3:14,21
**66,199.20 (1)**
29:22

**7**

**7 (3)**
18:21,23;21:22
**732,740.16 (1)**
29:24

---

### 8

---

**8004 (3)**
  29:21;30:7;39:9
**88,158.17 (1)**
  32:23
**8th (15)**
  6:22;7:3,11,21;
  8:23;13:10;15:13;
  27:11;28:16;29:4,9,
  11,14,22;33:13

---

### 9

---

**9019 (1)**
  8:21
**973406-2250 (1)**
  4:24