UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In re:  203-205 North 8ᵗʰ Street Loft, LLC,

                Debtor.

Chapter 11

Case No. 20-40793 (NHL)

------------------------------------------------------------------------x

In re:  3052 Brighton First, LLC,

                Debtor.

Chapter 11

Case No. 20-40794 (NHL)

------------------------------------------------------------------------x

**REPLY OF JEST HOLDINGS LLC TO OBJECTION TO APPLICATION FOR
THE ENTRY OF ORDER DIRECTING THE EXAMINATION OF THE
DEBTORS, ROSENBERG MUSSO & WEINER, LLP AND CHAIM
MILLER AND THE PRODUCTION OF DOCUMENTS PURSUANT
TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

JEST Holdings LLC ("JEST"), by its undersigned counsel, respectfully submits this Reply to the Response of Rosenberg Musso & Weiner ("RMW") in Opposition to Application (the "Application") for the entry of an order pursuant to Section 105(a) of Title 11, United States Code (the "Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and directing the production and turnover of documents, books, records and communications by and the examination of the Debtors (as defined below), Rosenberg Musso & Weiner, LLP and Chaim Miller, as more particularly set forth in the Application.  In support of this Application, JEST respectfully sets forth and represents as follows:

The scope of an examination permitted by Rule 2004 is broad and includes any matter which may affect the administration of the bankruptcy estate.  Fed. R. Bankr. P. 2004(b).  As the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination.  *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.,* 258 B.R. 580, 587

(Bankr.S.D.N.Y.2001).   As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate, *see Bennett Funding,* 203 B.R. at 28, and for "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Strecker,* 251 B.R. 878, 882 (Bankr.D.Colo.2000) (citing *In re Duratech Indus., Inc.,* 241 B.R. 283, 289 (E.D.N.Y.1999)).   In this regard, courts have recognized that Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions. *See e.g., In b re GHR Energy Corp.,* 33 B.R. 451, 453 (Bankr.D.Mass.1983).

Here, the Application seeks discovery relating to issues that go to the very heart of administration of the Debtors' bankruptcy estates and implicates issues relating to whether these bankruptcy proceedings have used in furtherance of a scam involving Chapter 11 counsel and RMW's attorney escrow funds.   These issues fall squarely within the scope of Bankruptcy Rule 2004.   In fact, since filing the Rule 2004 Application, JEST has learned that it is not the only party with which Mr. Weiner entered into post-petition escrow agreements for the benefit of the Debtors and in furtherance of potential settlements with secured creditors.   Specifically, on or about May 30, 2022, Mr. Weiner, as escrow agent, entered into yet another escrow agreement with Queens Equities, LLC pursuant to which $565,000.00 was deposited into RMW's attorney escrow account in connection with a settlement between the Debtor, 3052 Brighton First, LLC, and its secured creditors.   A true and correct copy of this Escrow Agreement is annexed hereto as Exhibit A.   The full extent of this escrow scheme is not yet known and could potentially involve even more parties.   What is certain is that they affect the administration of the bankruptcy estates.   The notion that undisclosed post-petition financial transactions undertaken by Chapter 11 counsel in furtherance of potential Debtor settlements are somehow outside of the purview of Rule 2004 simply defies credulity.

"Party in interest" status is broad and expansive.  The bankruptcy court must determine a party's status on a case-by-case basis to see if this party has a sufficient stake in the proceeding which would require representation.  JEST has more than a sufficient stake in the outcome of these issues to be deemed a party in interest for the limited purpose of conducting Rule 2004 discovery.

Contrary to RMW's suggestion, JEST is also clearly a creditor of each of the Debtors and, therefore, a party in interest.  The Bankruptcy Code defines "creditor" to include any entity that has a claim against the debtor.  11 U.S.C. § 101(10).  In turn, "claim" is defined to include any right to payment, whether or not it is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.  11 U.S.C. § 101(5).  Here, JEST entered into a series of post-petition escrow agreements with Chapter 11 counsel acting on behalf of the Debtors' respective estates, the express terms of which was to further anticipated settlements by and between the Debtors and their respective secured creditors. A plain reading of the escrow agreements demonstrates that the funds provided by JEST were intended to benefit the Debtors, and were to be returned on demand, thereby giving rise to a "claim" against each of the Debtors (as well as RMW) for the escrow funds that have not been returned.  At all times relevant, it was JEST's understanding that the funds were being held for the benefit of the Debtors.  As the holder of a "claim," JEST is a party in interest entitled to Rule 2004 discovery regarding the subject transactions and to determining whether wrongdoing has occurred.

In an effort to prevent this Court from understanding and addressing the potentially fraudulent activities that took place in these Chapter 11 proceedings with the assistance of the Debtors' principal, Chaim Miller, and the Debtors' Chapter 11 counsel, RMW, Mr. Weiner concocts a narrative whereby "Miller arranged with Jest for money that according to Jest Miller wanted to use to try to reach a settlement with the secured creditors in the Debtors' cases."  This

statement is not supported by any affidavit or evidence.  To be sure, Mr. Miller is not a party to any of the escrow agreements.  RMW's attempt to write the Debtors out these transactions and replace them with Mr. Miller, individually, is baseless and raises conflicts of interest issues (also directly related to the administration of these Chapter 11 proceedings).  RMW does not, or at least should not be representing Mr. Miller.  Nor was Mr. Miller the intended recipient of the funds – they were to be used by the Debtors in connection with a bankruptcy settlement that never occurred.

Accordingly, Mr. Weiner's statement that "Millet [sic] demanded that RMW not release any more money to Jest" is of no moment.  By the express terms of the escrow agreements, RMW was to release the funds to JEST upon demand.  Mr. Miller had no authority to direct the transfer of funds under the escrow agreements.  This Court is the proper forum to determine why these funds have not been turned over to JEST, and where JEST should conduct discovery regarding same and to ultimately effectuate turn over of the funds.  Mr. Weiner's suggestion that he did not transfer the remaining escrow funds to JEST on Mr. Miller's direction also directly contradicts the series of excuses previously provided by Mr. Weiner as to why the funds could not be immediately returned, not to mention the correspondence from Mr. Miller stating he does not object to their release.

It is equally puzzling why Mr. Weiner chose to commence an interpleader action in state court, as opposed to depositing such funds with the Bankruptcy Court.  It is presumably Mr. Miller's preference to make a run at JEST's funds, funds he has no entitlement to, in a forum unfamiliar with the convoluted history of these cases, and far away from this Court.  RMW has no skin in the game and should have no preference for state court unless it has been doing Mr. Miller's bidding.  Mr. Weiner is playing a cynical game.  He has not actually deposited any of the escrowed

funds with the state court or any other court.  In fact, in the interpleader action he has strategically omitted how much of the funds he is actually holding, if any.  Mr. Miller could also direct RMW not to proceed with the interpleader, thereby maintaining the escrowed funds wherever they may be.  In this regard, Mr. Weiner has yet to even verify whether he is actually still holding these funds in his attorney escrow account or whether they have already been transferred elsewhere.

WHEREFORE, JEST respectfully requests that this Court grant its Application in its entirety, enter an Order pursuant to Rules 2004 and 9016 of the Bankruptcy Rules, authorizing the Proponents to serve the Subpoenas directing the Debtors, RMW and Miller to produce and turnover the Documents and to appear for examination, and for such other and further relief as this Court deems just and proper.

Dated: March 10, 2023
New York, New York

WHITE & WOLNERMAN, PLLC

By: /s/ David Y. Wolnerman
David Y. Wolnerman, Esq.
950 Third Avenue, 11th Floor
New York, New York 10022
(212) 308-0603
dwolnerman@wwlawgroup.com

*Counsel for JEST Holdings, LLC*