# ESCROW AGREEMENT

QUEEN EQUITIES, LLC
1120 Lexington Ave
Lakewood NJ 08701
Attention: Jonathan Rubin

Re: The escrow of that certain Deposit (defined herein) in connection with the anticipated settlement agreement between 3052 Brighton First, LLC and <u>its 3052 Brighton Frist Street II LLC and 3052 Brighton First Street LLC</u>

This Escrow Agreement is made as of May 30, 2022 by and between QUEEN EQUITY LLC, a New Jersey limited liability company ("Company") and ROSENBERG, MUSSO & WEINER as Escrow Agent (the "Escrow Agent");

1. <u>Appointment of the Escrow Agent; Delivery of Escrow</u>. Company appoints the Escrow Agent as, and the Escrow Agent agrees to assume and perform the duties of, the escrow agent under and pursuant to this Escrow Agreement.

2. <u>Subject of Escrow</u>. Company agrees to deposit $565,000.00 ("the "Deposit") with Escrow Agent to hold in the Company's IOLA account at JP Morgan Chase Bank in connection with and furtherance of the anticipated settlement agreement between 3052 Brighton First, LLC and its secured creditors 3052 Brighton First Street II LLC and 3052 Brighton First Street LLC (the "Secured Creditors").

3. <u>Acceptance and Undertaking of the Escrow Agent</u>. The Escrow Agent hereby covenants to hold the Deposit deposited with it by the Company (the "Escrow") and subsequently to release or return, as the case may be, the Deposit or any part thereof, only pursuant to and in strict accordance with all of the terms and conditions of this Escrow Agreement.

4. <u>Disbursement of Escrow</u>. Escrow Agent shall hold the Deposit until the settlement is agreed to and put in a written agreement signed by all the parties, agreed to by the Company (by Jonathan Rubin) and then approved by the United States Bankruptcy Court.. Upon entry of an order approving the agreement, the Deposit shall be turned over by the Escrow Agent to the attorneys for the Secured Creditors. Notwithstanding the foregoing, the Company may at any time determine to terminate this Escrow Agreement upon written request of Jonathan Rubin at which point the Deposit shall be immediately returned to the Company.

5. <u>Liability</u>. Company agrees to indemnify and hold Escrow Agent, its officers, directors, employees and agents, harmless against any and all losses, liabilities, damages, reasonable fees (including reasonable attorneys' fees), costs and expenses that may be imposed or incurred by or assessed against it or them, in the absence of its gross negligence, bad faith or willful misconduct that arises out of the services performed by it or them under this Escrow Agreement, any action taken, suffered or not taken by it or them in accordance with this Escrow Agreement, or otherwise in accordance with this Escrow Agreement. This indemnification shall survive termination of this Escrow Agreement.

Escrow Agent may consult with counsel of its selection and may conclusively rely on the written advice of such counsel or any opinion of counsel in respect of any action taken or suffered or omitted by it hereunder in good faith and in accordance with such written advice or such opinion of counsel.

Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it, in good faith, or for anything which it may do or refrain from doing in connection herewith. Escrow Agent may rely on and shall be protected in acting upon any direction, certificate, instrument, opinion, notice, letter, telegram or other document delivered to it by any other person or entity and which in good faith it believes to be genuine and which has been signed by the proper party or parties.

Escrow Agent shall not be required to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder, or in the exercise of its rights or powers, if Escrow Agent believes that repayment of such funds (repaid in accordance with the terms of this Escrow Agreement) or indemnity satisfactory to it against such risk or liability is not reasonably assured to it.

Escrow Agent shall not be responsible for any delay or failure in performance to the extent and during the period such performance is prevented by circumstances arising without fault on Escrow Agent's part and beyond its reasonable control, including, without limitation, acts of God, strikes, lockouts, riots, acts of war or terrorism, epidemics, fire, earthquakes or other disasters.

This Escrow Agreement supersedes any letter agreement or other agreement or arrangement that may exist between Escrow Agent and Company with respect to the Deposit. No deviation in performance of the terms of any previous agreement between Escrow Agent and any of the undersigned shall alter any of Escrow Agent's duties or responsibilities as set forth herein.

Any notices, demands, instructions or other communications required or permitted to be given to or made upon any party hereto shall be in writing and shall be personally delivered or sent by overnight courier service, or by registered, certified or express mail, postage prepaid, return receipt requested, or electronic mail, and shall be effective when received by the addressee. Unless otherwise specified in a notice sent or delivered in accordance with the foregoing provisions of this paragraph, notices, demands, instructions and other communications shall be given in writing to the respective parties hereto at their respective addresses (or to their respective email addresses, followed by notice pursuant to one of the other methods set forth above) set forth below.

This Escrow Agreement shall be construed in accordance with the laws of the State of New York without regard to conflicts of law principles (except for Section 5-1401 of the New York General Obligations Law which shall govern) and the obligations, rights, and remedies of the parties hereunder shall be determined in accordance with such laws.

6.    <u>Termination</u>. This Escrow Agreement shall only terminate upon the written consent of Jonathan Rubin at which point the Deposit shall be immediately returned to the Company.

7. <u>Strict Compliance</u>. Company acknowledges that unless and until this Escrow Agreement is strictly complied with, time being of the essence hereof, Agent may withhold any and all subsequent advances to Company.

8. <u>Miscellaneous</u>. This Escrow Agreement is binding upon and will inure to the benefit of the parties to this Escrow Agreement and their respective successors and permitted assigns. The headings used in this Escrow Agreement have been inserted for convenience of reference only and do not define or limit the provisions of this Escrow Agreement. This Escrow Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. This Escrow Agreement shall be governed by the laws of the State of New York.

9. <u>Counterparts</u>. This Escrow Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute one and the same instrument. The parties intend that faxed signatures and electronically imaged signatures such as .pdf files shall constitute original signatures and are binding on all parties.

**COMPANY**:

**QUEEN EQUITIES LLC** a
New Jersey limited liability company

By: _/s/ Jonathan Rubin_
Name: Jonathan Rubin
Title:   Managing Member



**ESCROW AGENT**

**ROSENBERG MUSSO & WEINER LLP**,
a limited liability partnership

By: _/s/ Bruce Weiner_
Name: Bruce Weiner, Esq.